Phil BAKER, Petitioner,

v.

UNITED STATES DEPARTMENT OF the INTERIOR BOARD OF MINE OPERATIONS APPEALS, Respondent,

North American Coal Corporation, Intervenor.

No. 77–1973.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 22, 1978.

Decided Nov. 29, 1978.

Charles E. DeBord, II, Wellsburg, W. Va., with whom John W. Cooper, Wellsburg, W. Va., was on brief, for petitioner.

Timothy M. Biddle, Washington, D. C., with whom John C. Reitz, Washington, D. C., was on brief, for intervenor.

Robert E. Kopp and Mark H. Gallant, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before McGOWAN and TAMM, Circuit Judges, and JUNE L. GREEN,* United States District Judge for the District of Columbia.

Opinion for the court filed by TAMM, Circuit Judge.

TAMM, Circuit Judge:

In this case we are called upon to interpret section 110(b) of the Federal Coal Mine Health and Safety Act of 1969 (the Act).[1]

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Section 110(b), 30 U.S.C. § 820(b) (1976) provides:

   (1) No person shall discharge or in any other way discriminate against or cause to be discharged or discriminated against any miner or any authorized representative of miners by reason of the fact that such miner or representative (A) has notified the Secretary [of the Interior] or his authorized representa-

tive of any alleged violation or danger, (B) has filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or (C) has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter.

   (2) Any miner or a representative of miners who believes that he has been discharged or otherwise discriminated against by any person in violation of paragraph (1) of this

In accord with the recent precedent of this court, and the legislative intent behind section 110(b), we hold that a miner who makes a safety complaint is protected from employer retaliation whether or not the miner intended the complaint to reach federal officials at the time it was made.[2] We also hold that an administrative law judge considering an application for relief under section 110(b) may not find violations of mandatory safety standards outside of the particular statutory procedure created for adjudication of safety violations.

## I

■ The petitioner, Phil Baker, is a coal miner employed by The North American Coal Corporation at its Powhatan No. 1 mine in Powhatan Point, Ohio. On May 21, 1974, Baker was working as the operator of a continuous miner, a hydraulically powered cutting machine. The present controversy arose when Baker refused to follow directions of the mine section mechanic, Wayne Kaldor, to operate the miner in a manner Baker believed to be dangerous.

After Baker's refusal, he and Kaldor sought out the section foreman, Larry McNear. McNear ordered Baker to operate the machine. Baker repeated his belief that such a procedure would be unsafe. McNear repeated his order. Baker again refused and asked McNear to call a union safety committeeman. McNear told Baker to obey his order or risk removal from work. Baker asked to talk with Joe Robson, a union safety committeeman. McNear and Baker apparently continued to argue until Baker picked up a nearby telephone pager and asked the mine dispatcher to call Joe Robson. McNear swiftly ripped the telephone loose, severing the communications wires. After the phone was repaired minutes later, Baker talked with a safety committeeman and, pursuant to his instructions, returned to work.

Nevertheless, the incident appears to have created great controversy at the mine. The next day, Joe Robson, through the union mine safety committee, filed a safety grievance against Larry McNear charging that McNear refused to allow Baker to contact his safety committeeman and asking

---

subsection may, within thirty days after such violation occurs, apply to the Secretary for a review of such alleged discharge or discrimination. *A copy of the application shall be sent to such person who shall be the respondent.* Upon receipt of such application, the Secretary shall cause such investigation to be made as he deems appropriate. Such investigation shall provide an opportunity for a public hearing at the request of any party to enable the parties to present information relating to such violation. The parties shall be given written notice of the time and place of the hearing at least five days prior to the hearing. Any such hearing shall be of record and shall be subject to section 554 of Title 5. Upon receiving the report of such investigation, the Secretary shall make findings of fact. If he finds that such violation did occur, he shall issue a decision, incorporating an order therein, requiring the person committing such violation to take such affirmative action to abate the violation as the Secretary deems appropriate, including, but not limited to, the rehiring or reinstatement of the miner or representative of miners to his former position with back pay. If he finds that there was no such violation, he shall issue an order denying the application. Such order shall incorporate the Secretary's findings therein. Any order issued by the Secre-

tary under this paragraph shall be subject to judicial review in accordance with section 816 of this title. Violations by any person of *paragraph (1) of this subsection shall be subject to the provisions of sections 818 and 819(a) of this title.*

(3) Whenever an order is issued under this subsection, at the request of the applicant, a sum equal to the *aggregate amount of all costs and expenses (including the attorney's fees) as determined by the Secretary to have been reasonably incurred by the applicant for, or in connection with, the institution and prosecution of such proceedings, shall be assessed against the person committing such violation.*

The section has been amended. *See* 30 U.S.C.A. § 815(c)(1) (1978). For a description of the Federal Mines Safety and Health Amendments Act of 1977, 30 U.S.C.A. §§ 801–961 (1978), *see Munsey v. Federal Mine Safety and Health Review Comm'n,* 193 U.S.App.D.C. ——, at —— —— n. 2, 595 F.2d 735 at 736–738 n. 2 (1978).

2. We also apply this holding in *Munsey v. Federal Mine Safety and Health Review Comm'n,* 193 U.S.App.D.C. ——, at —— n. 5, 595 F.2d 735, at 740 n. 5 (1978).

that McNear be suspended until he was retrained in safety procedures. The mine was idled by a work stoppage the same day, apparently because of the dispute. Several meetings were held between the union and mine management.

On May 23, 1974, union and management officials and employees met again. At the meeting, the union repeated its demands that McNear be suspended and retrained. After the meeting ended, mine management personnel told Baker he would be fired in five days unless the union withdrew its charge against McNear. Fearing Baker would lose his job, the union capitulated.

A month later, however, Baker filed an application with the Secretary of the Interior for review of alleged acts of discrimination pursuant to section 110(b)(2) of the Act. After holding five days of hearings, the administrative law judge (ALJ) concluded that Baker's notification to McNear of the alleged safety violation constituted a notification to the Secretary of the Interior or his authorized representative and the institution of proceedings within the meaning of section 110(b)(1)(A) & (B) and our decision in *Phillips v. Interior Board of Mine Operations Appeals*, 163 U.S.App.D.C. 104, 500 F.2d 772 (1974). Appendix (App.) at 17, 19–20. Thus, the ALJ concluded that McNear's action on May 21 and the mine management's threats on May 23 constituted discrimination in contravention of section 110(b). *Id.* at 20–21.

The Interior Board of Mine Operations Appeals (the Board) reversed, finding that the ALJ had misapplied our ruling in *Phillips*. According to the Board, the *Phillips* court wanted "to afford protection to miners who *intend* to notify the federal authorities, but who are thwarted in doing so by preemptory retaliatory action by an employer." *Baker v. North American Coal Co.,* 84 Interior Dec. 877, 886 (1977) (emphasis in original). The Board concluded that because Baker did not intend to contact federal authorities and because he and the union viewed the events primarily as a private labor dispute, Baker's complaint to

McNear did not constitute a notification under section 110(b). *Id.* at 888. This petition for review followed the Board's decision.[3]

## II

The Board's imposition of an "intent" requirement into the notification provisions of section 110(b)(1) was based on its reading of this court's decisions in *Phillips* and in *Munsey v. Morton (Munsey I),* 165 U.S.App.D.C. 379, 507 F.2d 1202 (1974) and legislative history. *See* 84 Interior Dec. at 886–87. We believe, however, that a close reading of our own precedent and legislative history leads inexorably to the opposite conclusion.

As the Board recognized, neither the *Phillips* nor the *Munsey I* courts held that every statement made by a miner to his foreman about a safety issue would be considered notification to the Secretary of the Interior or his authorized representative within the meaning of section 110(b). However, the limiting principle was not, as the Board suggests, whether a miner intended to notify federal officials. Rather, the court's concern was whether the miner had " 'instituted [a] proceeding' with the closest representative of any authority, *i. e.,* his foreman, by making an effective complaint of a violation of the Mine Safety Act." *Phillips v. Interior Board of Mine Operations Appeals,* 163 U.S.App.D.C. at 113, 500 F.2d at 781. Finding that notification of a foreman was the first step in making mine safety complaints in Phillips's mine, this court concluded that the miner had invoked the protection of the Act. *Id.* at 778–81. *Munsey I* proceeded on the same principle. The court remanded to the Board for consideration of whether *Phillips* controlled the facts of that case. 165 U.S. App.D.C. at 386, 507 F.2d at 1209. The remand was necessary because the court had before it no findings concerning the procedures in use at Munsey's mine for the reporting of safety provisions.

Neither case suggested that the miner's intent to notify federal authorities at the

---

3. The North American Coal Corporation appeared as intervenor before this court.

time he made the complaint was important. Indeed the *Phillips* court impliedly rejected the Board's alternative holding that Phillips was not entitled to relief because he had not *intended* to notify the Secretary or his authorized representative. *See* 163 U.S. App.D.C. at 109–110, 500 F.2d at 777–78. Nor did it discuss Phillips's intent.[4] Similarly, the *Munsey I* court remanded Munsey's case to the Board for reconsideration in light of *Phillips* without suggesting that intent to notify federal officials be considered on remand.

The Board argues, however, that its decision is consistent with the congressional purposes behind enactment of section 110(b). Specifically, the Board pointed in its decision to remarks made on the floor of the Senate by the section's sponsor, Senator Edward M. Kennedy, to support its conclusion that the congressional purpose of encouraging the reporting of safety violations to federal officials is not served when a miner is disciplined before he intends to contact federal officials. 84 Interior Dec. at 887.

Senator Kennedy's remarks certainly emphasize the importance of the remedial purposes of the section:

> My proposed amendment would make it unlawful for any person to discharge or otherwise discriminate against a miner for bringing suspected violations of this act to the attention of authorities.
>
> .　　.　　.　　.　　.
>
> [T]he rationale for this amendment is clear. For safety's sake we want to encourage the reporting of suspected violations of health and safety regulations.

115 Cong.Rec. 27948 (1969).

We believe, however, that the Board's imposition of a specific intent requirement would frustrate the congressional purpose to encourage the reporting of safety viola-

tions in two ways. First, we believe that it would leave many miners without any protection from retaliation because they have not, in fact, formed any intent to contact federal officials at the time they informed their foreman of suspected safety or health problems. Their lack of intent, however, would not necessarily indicate that the miners saw the problem as one strictly for local concern; rather, it is likely that most miners would not form an intent to contact federal officials until they realized that mine management was not responsive to their complaints. Lack of such intent should not disqualify miners from the protection of section 110(b), because the same desire to promote greater safety that underlies section 110(b) also suggests that safety complaints should, if possible, be resolved at the local level. The intent requirement, however, would allow mine management to fire with impunity miners who had not yet realized that management will not consider their safety complaints, and thus had not yet formed an intent to seek federal aid. Imposition of the specific intent requirement used by the Board would bring about the situation the *Phillips* court strove to avoid, for "a foreman's determination of safety would become final." At 113, 500 F.2d at 781.

Second, we believe the imposition of a specific intent requirement would place a significant burden even on those miners who did possess the requisite intent. Such a requirement would mandate an inquiry into the subjective state of mind of a miner who, as in this case, has already demonstrated his concern over safety issues and who has suffered threats and coercion from the mine management because of it. Intent may be difficult to prove, and the congressional desire to encourage the reporting of safety violations cannot be squared with the addition of a test that might well leave a miner without recourse

---

4. The Board suggests that Baker's lack of intent to notify federal officials is demonstrated by his decision to invoke union collective bargaining procedures before he sought protection from federal authorities. *See Baker v. North American Coal Co.*, 84 Interior Dec. 877, 888 (1977). Our conclusion that the *Phillips* court did not ratify an intent requirement is bolstered by the fact that Phillips also sought recourse through collective bargaining procedures before he contacted federal authorities. *See Phillips v. Interior Bd. of Mine Operations Appeals*, 163 U.S.App.D.C. 104, 108–09, 500 F.2d 772, 776–77 (1974).

against the most blatant acts of employer discrimination. Moreover, miners cognizant of the necessity to prove intent could be deterred from reporting safety violations through normal mine procedures.

We must, therefore, reject establishment of a specific intent test. Because the Board adopted the ALJ's factual findings, 84 Interior Dec. at 885, we order that the judgment of the administrative law judge be reinstated insofar as it pertains to findings of and remedies for discrimination under section 110(b).

### III

■ In his application for review of acts of discrimination, Baker charged that The North American Coal Company violated section 110(b)(1) of the Act. App. at 3. When the ALJ handed down his decision, however, he found not only violations of section 110(b)(1)(A) & (B), but also substantive violations of mandatory safety standards. App. at 18; see 30 U.S.C. § 811 (1976) (current version at 30 U.S.C.A. § 811 (1978)).[5] The Board reversed the ALJ's latter findings on the ground that an administrative law judge may not find a coal mine operator in violation of a mandatory safety standard absent a charge to that effect brought by federal mine inspectors. 84 Interior Dec. at 889. This conclusion is in accord with the Board's own precedent. See Zeigler Coal Co., 80 Interior Dec. 626, 630 (1973). Additionally, the Board held that the finding of an actual violation of a safety standard is irrelevant in a proceeding under section 110(b). We must decide whether the ALJ acted within his authority when he found violations of mandatory safety standards in a proceeding on the application for review of alleged discrimination under section 110(b)(2).

We believe that the Board's conclusion is correct. Section 103(g)[6] of the Act allows a miner's representative to demand an immediate inspection of a mine whenever he has reasonable grounds to believe that a violation of a mandatory safety standard exists or imminent danger is threatened. Upon inspection, an authorized representative of the Secretary of Interior may issue a notice of violation under section 104 of the Act[7] which is appealable to the Secretary under section 105.[8] Civil penalties may be assessed under section 109 of the Act.[9]

Section 110(b)(2) of the Act gives a miner the right, exercised in this case, to apply to the Secretary for review of an allegedly retaliatory discharge or discrimination. Although an allegation under section 110(b) mandates adjudication of issues pertaining to retaliation for a report of a safety violation, an administrative law judge need not decide whether safety violations actually existed. This fact, along with the explicit presence of a separate statutory procedure for finding safety violations, leads us to hold that an administrative law judge may not find a violation of mandatory safety standards absent the particular statutory proceedings for bringing that issue to federal attention. Therefore, we affirm the Board's holding.

*Affirmed in part; reversed in part.*

---

**5.** The administrative law judge found that The North American Coal Corporation, through its foreman Larry McNear, had violated 30 C.F.R. §§ 75.1600–2(e), 75.1722(a) and 75.1725(a) (1976). Appendix at 18.

**6.** 30 U.S.C. § 813(g) (1976) (current version at 30 U.S.C.A. § 813(g) (1978)).

**7.** 30 U.S.C. § 814 (1976) (current version at 30 U.S.C.A. §§ 814 & 817 (1978)).

**8.** 30 U.S.C. § 815 (1976) (current version at 30 U.S.C.A. § 815 (1978)).

**9.** 30 U.S.C. § 819 (1976) (current version at 30 U.S.C.A. § 820 (1978)).