**Judith A. NEAL, Plaintiff,**

v.

**HONEYWELL, INC., a corporation, and Alliant Techsystems Inc., a corporation, Defendants.**

**No. 93 C 1143.**

United States District Court,
N.D. Illinois, E.D.

June 16, 1993.

Opinion Certifying Interlocutory
Appeal July 9, 1993.

---

William J. Holloway, Michael John Leech, William G. Swindal, Robert Hill Smeltzer, Hinshaw & Culbertson, Chicago, IL, for plaintiff.

James A. Burstein, Paul E. Freehling, Kristin E. Michaels, Pope, Ballard, Shepard & Fowle, Ltd., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This matter is before us on the Defendants' Motion to Dismiss the Complaint. For the reasons stated below, the motion is denied.

### Facts

Plaintiff Judith Neal alleges that in February 1987 she discovered that her employer, Honeywell, was falsifying ballistics test data and delivering defective ammunition to the United States Army. When she discovered this conduct, she reported it to her superiors pursuant to internal Honeywell procedures. (Compl. ¶¶ 8, 15, 17, 19.) Honeywell responded by notifying the government and conducting an internal investigation. (Compl. ¶ 21.) The results of the investigation were shared with the Army, and a settlement agreement was reached under section 3730(a) of the False Claims Act. 31 U.S.C. § 3730(a). Pursuant to the agreement, Honeywell paid a settlement with an approxi-

mate value of two and one half million dollars. (Compl. ¶ 32.)

Neal alleges that Honeywell discriminated against her for notifying her superiors of the fraud. (Compl. ¶¶ 23, 34.) She was cut off from the Honeywell investigation, and never questioned about the matter by those in charge. (Compl. ¶ 23(a).) Physical threats were made against her by members of the plant's management, and she was often told that her coworkers hated her. (Compl. ¶ 23(c), (d).) Neal also alleges that Honeywell never informed her of her rights under the False Claims Act to file a *qui tam* lawsuit on behalf of the government. (Compl. ¶ 33.) The Complaint alleges that this conduct, which included the above threats, change of work responsibilities and failure to disclose her rights under the False Claims Act, constituted constructive suspension and discharge in violation of the whistleblower protection provisions of the False Claims Act. (Compl. ¶ 34.)

The Defendants have moved to dismiss the Complaint on three grounds. First, they argue that internal whistleblowers are not protected from retaliation by the False Claims Act. Second, they argue that the applicable statute of limitations has run. Finally, they argue that Neal failed to exhaust her state remedies.

## Discussion

 On a motion to dismiss, the court views the allegations of the complaint as true, along with reasonable inferences therefrom, and views these in the light most favorable to the plaintiff. *Dawson v. General Motors*, 977 F.2d 369, 372 (7th Cir.1992); *Powe v. Chicago*, 664 F.2d 639, 642 (7th Cir.1981). A complaint should not be dismissed with prejudice unless it appears beyond doubt that the plaintiff is unable to prove any set of facts consistent with the complaint which would entitle the plaintiff to relief. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). Unless otherwise provided by Rule 9 of the Federal Rules of Civil Procedure, facts need not be plead with particularity. *Leatherman v. Tarrant County Narcotics and Intelligence Unit,* — U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery. *Ellsworth v. Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986) (citations omitted).

## I. The False Claims Act

Plaintiff's claims arise under the False Claims Act. *See* 31 U.S.C. § 3729 *et seq.* In response to fraudulent practices by defense contractors during the Civil War, the False Claims Act [the "Act"] was first adopted in 1863 and signed into law by President Lincoln. The Act, in its present incarnation, allows the government to recover treble damages from those making false claims or submitting false information in support of those claims. 31 U.S.C. § 3729 (Supp.1993). In addition, the United States is entitled to a $5,000–$10,000 penalty for each fraudulent submission, regardless of actual damage. *See* 31 U.S.C. § 3729 *et seq.* (Supp.1993); Sen.R. No. 345, 99th Cong., 2d Sess., *reprinted in,* 1986 U.S.C.C.A.N. 5266, 5273 (history of the Act).

The original statute also allowed for a private party to bring suit under the Act. A private party who brings suit for a fraud committed against the government is known as a *"qui tam"* plaintiff. The term *qui tam* is derived from the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur,* which means "who brings the action for the king as well as for himself." *See* William Blackstone, *Commentaries on the Law of England* 160 (1768).[1] Under the original law, a *qui tam* plaintiff, or "relator" who brought suit successfully was entitled to

---

1. In addition to the False Claims Act, there are at least four similar federal laws now in force that share penalties or forfeitures with an informer. They are all, however, substantially more generous than the current version of the False Claims Act in that they grant an informer one half of the recovery. *See, e.g.,* 18 U.S.C. § 962 (1976) (forfeitures of vessels privately armed against friendly nations; one half use to informer, one half to government); 25 U.S.C. § 201 (1983) (recovery of penalties for violation of Indian protection laws; one half to informer, one half to govern-

one-half the damages and forfeitures as well as his costs. *See* Sen.R. No. 345, 99th Cong., 2d Sess., *reprinted in,* 1986 U.S.C.C.A.N. 5266, 5275 (history of the Act).

Though Congress and the courts have significantly restricted the ability of a private party to bring a *qui tam* lawsuit,[2] the current version of the law still provides for *qui tam* suits and entitles a successful *qui tam* relator to a portion of any recovery or settlement of the claim. *See* 31 U.S.C. § 3730(d) (Supp. 1993).

■ The purpose of the False Claims Act is, of course, to discourage fraud against the government. Concomitantly, the purpose of the *qui tam* provision of the Act is to encourage those with knowledge of fraud to come forward. *See* H.R.Rep. No. 660, 99th Cong., 2d Sess., 22 (1986).

In order to protect *qui tam* relators from retaliation by their employers, the False Claims Act now contains a whistleblower protection clause. That clause, 31 U.S.C. section 3730(h), provides in pertinent part:

> Any employee who is ... in any ... manner discriminated against in the terms and conditions of employment by ... her employer because of lawful acts done by the employee ... in furtherance of an action ... filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h).

■ It is clear that the statutory protections of section 3730(h)[3] extend to persons who bring a *qui tam* action, pursuant to section 3730(b), for violations of the Act. *See, e.g., Coleson v. Inspector General of the Dep't of Defense,* 721 F.Supp. 763, 765 (E.D.Va.1989). It is also clear that protected conduct under section 3730(h) extends beyond the actual *qui tam* relator to others involved in the suit, including any person who initiated, investigated, testified, or assisted in "an action filed or to be filed" under the Act. 31 U.S.C. § 3730(h). What is not clear, however, is how far the protections of the statute extend beyond those limits.

## II. *The Scope of Whistleblower Protection under the Act*

In the present case the Plaintiff did not take her information to the government. In-

---

ment); 35 U.S.C. § 292 (1984) (penalties for patent infringement, one half to private party suing, one half to government); 46 U.S.C. § 723 (1975) (forfeiture of vessels taking undersea treasure from the Florida coast to foreign nations; one moiety to informer, other to government).

2. For instance, the Act was amended to prohibit so-called "parasitic" *qui tam* suits by plaintiffs who obtained their information about the fraud from a public source such as a criminal indictment. *See* Sen.R. No. 345, 99th Cong., 2d Sess., *reprinted in,* 1986 U.S.C.C.A.N. 5266, 5275 (history of the Act). These exceptions provide as follows:

> No Court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e) (Supp.1993). At least one recent article suggests that these limitations are not enough. *See* John Cavanagh and Mark Troy, *Qui Tam Provisions of the False Claims Act: Congress Should Limit the Power of Citizen Plaintiffs,* L.A.Law. March 1992 at 34.

3. Section 3730(h) provides in its entirety:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h) (Supp.1993).

stead, she reported what she had uncovered to her superiors at Honeywell who then notified the government and the matter was settled. Though the Plaintiff alleges that the Attorney General conducted an investigation, no False Claims Act lawsuit was ever filed, and because the government is now in possession of the relevant information and has settled the matter, no such action may be filed. Thus, the issue presented to us is whether an internal whistleblower may state a claim under the whistleblower protection provisions of the False Claims Act when no lawsuit was ever filed, either by the whistleblower or another informer as a *qui tam* relator, or by the government.

### A. As a general rule, whistleblower protection statutes are remedial in nature and thus are broadly construed.

Many courts have addressed issues similar to the one before us today under different federal whistleblower protection statutes. Almost without exception, they have held that the coverage of the statute at issue should be broadly construed so as to include internal, or "intracorporate" whistleblowing, even where the conduct involved did not come under the literal terms of the statute.

In *NLRB v. Scrivener*, 405 U.S. 117, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972), the Supreme Court held that language in the National Labor Relations Act extended whistleblower protection to an employee who did not meet the literal requirements of the statute. While the statute expressly covered an employee who "has filed charges or given testimony," the Court extended protection to an employee who had given a statement to a NLRB examiner but had neither filed charges or testified at a formal hearing. In so holding, the Court noted that such an interpretation had a long history: the Labor Board had, since 1934, interpreted the language to cover those "giving information relating to violations of the NLRA." *Id.* at

123, 92 S.Ct. at 802 (*citing New York Rapid Transit Corp.*, 1 N.L.R.B. Dec. 192 (1934)). *See also NLRB v. Retail Store Employees Union*, 570 F.2d 586, 590 (6th Cir.1978) (following *Scrivener* ), *cert. denied*, 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 109 (1978).

In *Passaic Valley Sewerage Commissioners v. United States Department of Labor*, 992 F.2d 474 (3d Cir.1993), the Third Circuit upheld the Secretary of Labor's construction of the whistleblower protection clause in the Clean Water Act to cover internal whistleblowers. The language at issue in *Passaic* was similar to the language of the False Claims Act. It protected any employee who "has filed, instituted, or cause to be filed or instituted any proceeding under this chapter." 33 U.S.C. § 1367. The Secretary of Labor held that the language protected an employee who had made only internal complaints to his superiors, and the Third Circuit agreed.

In addition to *Scrivener* and *Passaic*, the federal courts have been nearly unanimous in holding that whistleblower protection is available under various statutes to employees who are discriminated against after taking their concerns to internal corporate entities rather than an outside law enforcement agency. *See Passaic, id.*; *Jones v. Tennessee Valley Auth.*, 948 F.2d 258, 264 (6th Cir.1991) (internal safety complaints are protected by pre-amendment Energy Reorganization Act, 42 U.S.C. § 5851(a), which covered employees who "commenced ... a proceeding under this chapter."); *Pogue v. United States Dep't of Labor*, 940 F.2d 1287, 1989 (9th Cir.1991) (noting that there was no dispute that internal whistleblowing was protected conduct under The Clean Water Act);[4] *Rayner v. Smirl*, 873 F.2d 60, 63–64 (4th Cir.1989) (Federal Railroad Safety Act, 45 U.S.C. § 441(a), which literally covers employees who "filed any complaint or instituted ... any proceeding under or related to the enforcement of the Federal Railroad safety

---

4. The *Pogue* court made that comment in reference to three other environmental statutes as well: (1) CERCLA, 42 U.S.C. § 9610(a) ("provided information to a State or to the Federal Government, filed, instituted, or caused to be filed or instituted any proceeding...."); (2) The Resource Conservation and Recovery Act, 42 U.S.C. § 6971 ("filed, instituted, or caused to be filed or instituted any proceeding...."); and (3) The Toxic Substances Control Act, 15 U.S.C. § 2622 ("assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other action to carry out the purposes of this chapter.").

laws...." covers internal complaints), *cert. denied*, 493 U.S. 876, 110 S.Ct. 213, 107 L.Ed.2d 166 (1989); *In re Willy*, 831 F.2d 545, 547–48 (5th Cir.1987) (noting that the decision in *Brown & Root, infra,* which denied protection to internal whistleblowers, had been rejected by three other circuits and by the Secretary of Labor); *Kansas Gas & Elec. Co. v. Brock,* 780 F.2d 1505, 1510–11 (10th Cir.1985) (Energy Reorganization Act), *cert denied,* 478 U.S. 1011, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986); *Mackowiak v. University Nuclear Sys., Inc.,* 735 F.2d 1159, 1162–63 (9th Cir.1984) (Energy Reorganization Act); *Donovan v. Stafford Constr. Co.,* 732 F.2d 954, 960 (D.C.Cir.1984) (though a literal reading of the Mine Safety Act requires an employee to file charges or give testimony, such a narrow construction frustrates remedial purpose of the Act); *Consolidated Edison Co. v. Donovan,* 673 F.2d 61 (2d Cir.1982) (assuming without discussion that the Energy Reorganization Act covers internal whistleblowers); *Baker v. Interior Board of Mine Operations Appeals,* 595 F.2d 746 (D.C.Cir. 1978) (The Mine Safety Act, 30 U.S.C. § 820(b)(1), which protects employees who "filed, instituted, or caused to be filed or instituted any proceeding under this chapter...." protects internal complaints); *Phillips v. Interior Bd. of Mine Operators Appeals,* 500 F.2d 772, 781–83 (D.C.Cir.1974) (Mine Safety Act construed to cover miners who complain but do not initiate formal proceedings), *cert denied sub nom., Kentucky Carbon Corp. v. Interior Board of Mine Operations Appeals,* 420 U.S. 938, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975). *But see Brown & Root, Inc. v. Donovan,* 747 F.2d 1029, 1031–32 (5th Cir.1984) (internal whistleblowing is not protected under the Pre-amendment Energy Reorganization Act).

█ In each of these cases, internal whistleblowers who did not fall within the literal terms of the statute were given protection in order to further the remedial purposes of the statutes involved. The present case presents a very similar situation. As in the cases cited above, there can be no doubt that Ms. Neal's actions here do not fall within the literal language of the False Claims Act. However, the great weight of precedent on this issue makes it clear that federal whistleblower protection laws are to be broadly construed to cover internal whistleblowers, even where the specific conduct at issue does not fall within a literal reading of the statute.

Defendant argues that the use of the word "action" indicates Congressional intent to limit the scope of 3730(h)'s protection to participants in a formal proceeding of some kind. Though the Defendants do not credit the Fifth Circuit for this logic, the reasoning urged upon us here is precisely that adopted by the court in *Brown & Root,* 747 F.2d at 1031–32.

In *Brown & Root,* the Fifth Circuit found that the use of the phrase "in any other action ... implies an 'action' is a kind of structured proceeding in which a person may participate, not just any act a person may perform." *Id.,* 747 F.2d at 1032. Thus, the court held that an internal whistleblower is not protected from discrimination.

Of course, *Brown & Root* took a minority position. More importantly, its holding was addressed directly by Congress when the Energy Reorganization Act was amended. The statute now explicitly protects internal whistleblowers. *See* 42 U.S.C. § 5851(a) (Supp.1992) (employee protected who "notified his employer of an alleged violation of this chapter...."). We view the amendment to the Energy Reorganization Act as a rejection of the literal, hypertechnical and overly narrow reading of whistleblower statutes urged upon us by the Defendant.[5]

---

5. The legislative history of section 3730(h), which was added to the False Claims Act in 1986, is inconclusive at best. Congress gave some indications that section 3730(h) was intended only to be a narrow remedy for *qui tam* plaintiffs and those who assist them or the government in filing suits under the Act. *See* 132 Cong.Rec. 22340 (1986) ("In addition, the bill provides 'whistleblower protections' to *qui tam* plaintiffs who suffer reprisals."); 132 Cong.Rec. 22336 (1986) (whistleblower protection provided to those who report fraud "in conjunction with false claims prosecutions."). However, other portions support a broader interpretation. *See* 132 Cong. Rec. 29322 (1986) (whistleblower protection for action "in any way connected with a person's activities under this law.")

The most direct statement on the scope of 3730(h) is of a similar contradictory nature. In the Senate Report accompanying the 1986

### B. Defendants' authority is unpersuasive.

Defendants' cited cases do not persuade us. In *Casarez v. Delco Sys. Operations*, No. 92–5844, 1993 WL 169255 (C.D.Cal. filed March 3, 1993) (Tashika, J.), the court read the language of section 3730(h) to show that the actual filing of a *qui tam* lawsuit under section 3730(b) is an absolute prerequisite to a suit for retaliation under section 3730(h). *Id.* at *1. It is of value to note that the *Casarez* decision was made without the benefit of argument from the plaintiff, who did not respond to the motion to dismiss. *Id.*

We reject *Casarez* for two reasons. First, it simply ignores the overwhelming precedent for the proposition that federal whistleblower statutes are to be broadly construed. Second, it construes section 3730(h) even more narrowly than can be justified with a literal reading: the absolute requirement of a *qui tam* suit as a prerequisite to protection under section 3730(h) is, we believe, an extreme position that is not supported by the statute. Though the literal language of section 3730(h) requires an action "filed or to be filed" under the provisions of the Act, it makes no distinction between one filed by a *qui tam* relator under subparagraph (b) and one filed by the government under subparagraph (a). *See* 31 U.S.C. § 3730(h).

Defendants' other cases mention that action in furtherance of a False Claims Act is protected by the statute. *See X Corp. v. Doe*, 816 F.Supp. 1086, 1095 (E.D.Va.1993) (Ellis, J.) (summary judgment granted against corporate attorney who could not prove his warnings to company officers were "in furtherance" of a *qui tam* suit); *Hardin v. DuPont Scandinavia*, 731 F.Supp. 1202, 1205 (S.D.N.Y.1990) (*dicta* suggesting that Plaintiff must have acted "in furtherance of" an action under section 3730). *See also Mayo v. Questech*, 727 F.Supp. 1007, 1014 n.

14 (E.D.Va.1989) (noting that legislative history of 3730(h) indicates it is a remedy of limited scope without any analysis or explanation of that conclusion). However, none of these cases discuss the precedent we have cited above, and we respectfully decline to follow them.

While attacking the *Casarez* court as "hopelessly mixed up," (Mem. in Opp. at 8), the Plaintiff cites *Rehman v. ECC International Corp.*, No. 90–425, 1993 WL 85758 (M.D.Fla. filed March 4, 1993) (Report and Recommendation) (Baker, Mag. J.). In *Rehman*, the Magistrate Judge recommended denial of a motion for summary judgment on the issue of whether the employer knew that the employee was acting pursuant to the Act. The employer argued that, because the employee never explicitly notified them that he was acting [6] pursuant to the False Claims Act, they could not have retaliated against him on that basis. *Id.*, 1993 WL 85758 at *2. The Magistrate Judge properly rejected that argument, stating:

> The intent of the statute is to provide early assurance to employees that their jobs will not be endangered by looking into and reporting possible misconduct by government contractors, *regardless of the informality or nascent status of the proceeding.*

*Id.* (emphasis added). Though this language is *dicta*, we believe the Magistrate Judge correctly summarized the purpose of the False Claims Act and the need to broadly construe its whistleblower protections in order to effectuate that purpose.

■ The False Claims Act is intended to put an end to fraud against the government by encouraging those with knowledge of such fraud to come forward. In order to further that purpose, public policy demands that internal whistleblowers like the Plaintiff in the present case be protected from retaliation.

---

amendments, the Senate gives the outer reach of section 3730(h)'s remedy:

Consequently, the Committee believes protection should extend not only to actual *qui tam* litigants, but those who assist or testify for the litigant, as well as those who assist the Government in bringing a false claims action. *Protected activity should therefore be interpreted broadly.*

Sen.Rep. No. 345, 99th Cong., 2d Sess. 34, *reprinted in*, 1986 U.S.C.C.A.N. 5266, 5299 (emphasis added). Thus, Congress, even when "broadly" interpreting the reach of 3730(h), managed to interpret it in such a narrow fashion as to make it uniquely harsh among federal whistleblower laws by seemingly limiting it to participants in formal proceedings.

**6.** The employee's conduct was not specified.

■ We respectfully decline to follow the *Casarez* construction of the Act.[7] It would make little sense to protect an anonymous *qui tam* plaintiff who filed an expensive and time-consuming lawsuit while ignoring someone like the Plaintiff, whose bold conduct led to a quick, voluntary and efficient disclosure of the fraud and reparation to the government. Thus, we hold that the whistleblower protection provision of the False Claims Act forbids discrimination against an employee who has made an intracorporate complaint about fraud against the government.

## III. *The Applicable Statute of Limitations*

■ The Defendant next argues that the applicable statute of limitations is the five year Illinois retaliatory discharge statute, which has run. Defendant advances this argument in spite of the presence of a six year statute in the False Claims Act itself. *See* 31 U.S.C. § 3731(b)(1) (Supp.1993).

Defendant argues that section 3731 applies only to *qui tam* actions brought under section 3729. *See United States ex rel. Truong v. Northrop Corp.*, No. CV–88–967 MRP, 1991 WL 496831 (C.D.Cal. filed Nov. 26, 1991) (applying state limitations period to action under 3730(h)). This argument contradicts the plain language of section 3731(b), which by its own terms applies to "[a] civil action under section 3730. . . ." 31 U.S.C. § 3731(b)(1). Plaintiff's action is, of course, filed pursuant to section 3730(h), and is therefore covered by the six year statute. *See Grand ex rel. United States of America v. Northrop Corp.*, 811 F.Supp. 333, 335–36 (S.D.Ohio 1992) (rejecting reasoning of *Truong* and holding that internal whistleblowers retaliation suit was subject to limitations period in 3731(b)). We find the reasoning in *Grand* to be more persuasive, and hold that the six year statute of limitations found in section 3731(b) applies in the present case.

## IV. *Plaintiff's Request for Qui Tam Remedies*

Finally, the Defendants urge us to strike a portion of the Plaintiff's prayer for relief. The offending portion seeks the damages Neal would have been entitled to if she had filed a *qui tam* suit under section 3730(b). (*See* Compl. ¶ 35(f)). Neal apparently seeks *qui tam* remedies on the theory that she would have been entitled to them had Honeywell not misled her about her rights to maintain anonymity while filing an action under the False Claims Act.

The Defendants simply argue that because no *qui tam* action was filed, Neal may not recover *qui tam* damages.[8] Indeed, section 3730(b), entitled "Award to Qui Tam plaintiff," applies only in the case of a *qui tam* suit by its own terms. However, Neal's theory is that she was, in effect, defrauded of a valid *qui tam* action when a Honeywell "hotline" attorney failed to tell her of its availability.

We make no determination on the validity of that theory, which is not directly challenged in this motion. However, section 3730(h) itself provides that a whistleblower who suffers retaliation "shall be entitled to all relief necessary to make the employee whole." 31 U.S.C. § 3730(h). To the extent that Neal can demonstrate that she was deprived of her right to file a successful *qui tam* suit by the actions of the Defendants, the damage provision of section 3730(b) may provide an effective guide to the jury when awarding damages.[9] Thus, we decline to strike paragraph 34(f) at this state of the litigation.

### Conclusion

For the reasons stated above, the Motion to Dismiss is denied.

---

7. If only Congress more often heeded Voltaire's advice: "Let all laws be clear, uniform and precise: to interpret laws is almost always to corrupt them." Voltaire, *Philosophical Dictionary*.

8. This potential raises the possibility that the government should be involved in this lawsuit.

If Neal is to receive a portion of the settlement, it is the government that has possession of those funds.

9. Of course, significant causation issues may arise with respect to this theory.

## MEMORANDUM OPINION AND ORDER CERTIFYING APPEAL INTERLOCUTORY

In our Memorandum Opinion and Order dated June 16, 1993, we held that the whistleblower protection provision of the False Claims Act, 31 U.S.C. section 3730(h),[1] protects internal corporate whistleblowers from retaliation even where a *qui tam* lawsuit is never filed under the Act. *See pages* 269–73. (Plunkett, J.) Relying on the proposition that whistleblower protection statutes are remedial in nature and thus to be liberally construed, we declined to follow recent cases to the contrary. *See page* 272.

We find that our decision to extend the coverage of section 3730(h) to a plaintiff who does not fall within the literal terms of the statute involves a controlling issue of law as to which there is substantial ground for difference of opinion. We also find that an immediate appeal of this issue may materially advance the ultimate termination of this litigation: should the Appellate Court decide that section 3730(h) does not apply in the present case, dismissal would be appropriate.

Therefor, we certify the following issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b): whether the whistleblower protection provision of the False Claims Act, 31 U.S.C. § 3730(h), applies where an employee presents evidence of fraud to her superiors who then voluntarily investigate the matter, disclose the results to the government and pay reparation without a *qui tam* lawsuit ever being filed.

---

1. That clause, 31 U.S.C. section 3730(h), provides in pertinent part:

Any employee who is ... in any ... manner discriminated against in the terms and conditions of employment by ... her employer because of lawful acts done by the employee ... in furtherance of an action ... filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. 31 U.S.C. § 3730(h).