UNITED STATES of America, ex rel. Karyl A. KENT; and Karyl A. Kent, in her own behalf, Plaintiff,

v.

Frank AIELLO, individually and as a General Partner and Owner of Portola Senior Apartments, Ltd.; Beverly Aiello, individually and as a General Partner and Owner of Portola Senior Apartments, Ltd.; Frank Aiello and Beverly Aiello as alter egos of the CBM Group, Inc., a California corporation, and R.S. Management Co., an entity; the CBM Group, Inc., a California corporation, itself, and as an agent of the Farmers Home Administration, an agency within the Government of the United States; R.S. Management Co., itself, and as an agent of the Farmers Home Administration, an agency within the Government of the United States, Defendants.

CIV. Nos. S–92–345 LKK, S–92–300.

United States District Court, E.D. California.

Nov. 2, 1993.

---

William Patterson Cashill, Reno, NV, for plaintiff.

Kelly J. Paur, Segal & Kirby, Sacramento, CA, for defendants Aiello.

Hardy, Erich, Brown & Wilson, Sacramento, CA, for defendant the CBM Group.

## ORDER

KARLTON, Chief Judge Emeritus.

This matter is before the court on defendants Frank Aiello, Beverly Aiello, and R.S. Management Co.'s motions to dismiss plaintiff's first claim for failure to plead fraud with sufficient particularity pursuant to Fed. R.Civ.P. 9(b), and her second claim for failure to state a cause of action pursuant to Fed.R.Civ.P. 12(b)(6).[1] For the reasons explained below, both motions are denied.

## I

### THE COMPLAINT

By this motion, defendants attack the allegations of the complaint. Below, I set out its pertinent allegations.

Frank and Beverly Aiello ("the Aiellos"), doing business as R.S. Management Co. ("R.S. Management"), owned and operated the Portola Senior Apartments, a housing project funded and subsidized by the Farmers Home Administration ("FmHA"), and other FmHA senior citizen residential complexes located throughout the Eastern District of California. Complaint ¶¶ 5–6. In

---

1. Defendant The CBM Group, Inc. filed a statement of non-opposition to the granting of the motions.

that capacity, they acted as agents of the FmHA. Complaint ¶ 5. On April 1, 1988, plaintiff entered into an employment contract with the Aiellos and R.S. Management to manage the Portola Senior Apartments. Complaint ¶¶ 14, 16.

On or about December 31, 1990, the Aiellos and R.S. Management turned over management of the Portola complex to The CBM Group, Inc. ("CBM"). Complaint ¶ 15. CBM thereafter assumed the employment contract, and plaintiff agreed to work for CBM. Complaint ¶ 16. Both employers led plaintiff to believe she would be employed under the contract until the age of retirement. Complaint ¶ 16.

Plaintiff's first cause of action is a qui tam claim brought against these defendants pursuant to 31 U.S.C. § 3730(b) (West 1993).[2] Complaint ¶¶ 9–12. She alleges that these moving defendants knowingly made use of false records to present the FmHA with various false claims, Complaint ¶¶ 11.1–11.3, and deposited the proceeds of these claims in their private bank accounts for their own benefit. Complaint ¶ 12. Plaintiff alleges that she is the original source of the information which she uncovered during the course of her employment. Complaint ¶ 11.

Plaintiff's second claim is brought pursuant to 31 U.S.C. § 3730(h) (West 1993). In that claim, plaintiff alleges that the Aiellos and R.S. Management so influenced and controlled CBM so as to cause them to terminate plaintiff's employment in retaliation for lawful acts done in furtherance of the qui tam action. Complaint ¶ 17.

Defendants originally moved to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), and for failure to specifically plead fraudulent matters pursuant to Fed.R.Civ.P. 9(b).[3] Now before the court are defendants' motion to dismiss plaintiff's second claim pursuant to

Fed.R.Civ.P. 12(b)(6) and plaintiff's first claim pursuant to Fed.R.Civ.P. 9(b).

## II

### THE FIRST CLAIM

This motion attacks the allegations of the complaint as insufficient relative to fraud claims. Although it was initially brought against both claims, because it is only the first claim which avers fraud, it is construed only as against that claim.

Federal Rule of Civil Procedure 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. The rule requires only the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir.1973). A statement of the time, place, and content of false representations and identity of parties is sufficient. *Schreiber Distributing v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1400–01 (9th Cir.1986); *see also Gottreich v. San Francisco Inv. Co.*, 552 F.2d 866, 867 (9th Cir.1977). Rule 9(b) does not excuse compliance with Fed.R.Civ.P. 8(a)'s short and plain statement rule. *See Schmidt v. Herrmann*, 614 F.2d 1221, 1224 (9th Cir.1980).

Plaintiff alleges facts sufficient to put defendants on notice of the circumstances constituting fraud so that the defendants can prepare an adequate answer from the allegations. *See* Complaint ¶¶ 11.2, 11.3 and 12. Accordingly, the motion is denied.

## III

### THE SECOND CLAIM

The attack on the second claim asserts that it fails to allege facts upon which relief may be granted.

---

2. A private party who brings suit for fraud committed against the Government is known as a qui tam plaintiff. The term "qui tam" is derived from the Latin phrase *"qui tam pro domino rege quam pro se ipso in hac parte sequitur,"* literally, "who brings the action for the king as well as for himself." *Neal v. Honeywell, Inc.*, 826 F.Supp. 266, 268 (N.D.Ill.1993) (*quoting* Blackstone, *Commentaries on the Law of England* 160 (1768)).

3. The 12(b)(1) motion is directed toward plaintiff's first claim and challenges plaintiff's assertion that she is the original source of the allegations of false claims. Accordingly, it is a speaking motion attacking the truth of the jurisdictional facts alleged by plaintiff and is resolved under summary judgment standards. Plaintiff's request for a continuance on that motion pursuant to Fed.R.Civ.P. 56(f) to engage in discovery was previously granted.

## A. Dismissal Standards Under Fed. R.Civ.P. 12(b)(6)

On a motion to dismiss, the allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks International Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465 n. 6, 10 L.Ed.2d 678 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *Id.* See also *Wheeldin v. Wheeler*, 373 U.S. 647, 648, 83 S.Ct. 1441, 1443, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v.*

*California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

## B. The Sufficiency of the Second Claim

Plaintiff's second claim is brought pursuant to 31 U.S.C. § 3730(h),[1] a "whistleblower" provision added to the False Claims Act in 1986. The section provides a remedy to employees harmed relative to the terms and conditions of their employment because of the plaintiff's acts done in furtherance of a qui tam action.[5]

Defendants argue that dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate on three separate grounds. First, they contend that plaintiff has failed to allege an action "filed or to be filed" which they claim is a necessary element under 31 U.S.C. § 3130; second, that plaintiff alleged her termination to be in response to testimony provided to the Grand Jury, a circumstance not addressed by 31 U.S.C. § 3730(h); and finally, that defendants cannot be sued because they were not plaintiff's employer at the time she was terminated. I address each argument seriatim.

■ Defendants' first argument must be rejected. By its terms, the statute creates a cause of action for an individual discriminated against for acts done "in furtherance of an action filed or to be filed" under the section and thus clearly extends to a plaintiff who brings a qui tam action pursuant to it. *See Coleson v. Inspector General of Department of Defense*, 721 F.Supp. 763, 765 (E.D.Va.1989). Section 3730(h) coverage, however, extends beyond a qui tam plaintiff

---

4. Plaintiff's second claim is entitled "Interference with a Witness" and contains reference to 42 U.S.C. § 1985. Defendants argue that plaintiff is collaterally estopped from asserting the claim, as the court has earlier held that plaintiff lacked standing to pursue a 42 U.S.C. § 1985(2) claim. Plaintiff clarifies in her opposition that her second claim is in fact brought pursuant to 31 U.S.C. § 3730(h), and asserts that she does not oppose the striking of all reference to 42 U.S.C. § 1985. Accordingly, all reference to 42 U.S.C. § 1985 will be stricken.

5. The statute provides in relevant part: "Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of a [qui tam action] including investigation for, initiation of, testimony for, or assistance in a [qui tam action] filed or to be filed shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement ... 2 times the amount of backpay, interest ... compensation for any special damages ... litigation costs and reasonable attorneys' fees...." 31 U.S.C. § 3730(h).

to persons who initiate, investigate, testify or who are otherwise involved in the filing of an action. *Neal v. Honeywell, Inc.*, 826 F.Supp. 266, 269 (N.D.Ill.1993).[6] Indeed, it has recently been held that a plaintiff who alleges that she suffered harm after making an internal corporate complaint relative to fraud against the Government states a cause of action under section 3730(h), even if no lawsuit was ever filed by the Government or by another qui tam informant. *Id.* at 270–72. *See also Pogue v. United States Department of Labor*, 940 F.2d 1287 (9th Cir.1991) (internal whistleblower protected under provisions of four environmental whistleblower statutes). Defendants' motion must be denied on this ground.

■ Defendants next argue that plaintiff cannot state a cause of action because her termination is alleged to be in response to testimony provided to the Grand Jury, which they contend is a circumstance not addressed by 31 U.S.C. § 3730(h). The statute, by its terms, however, provides that the list of circumstances specified is nonexclusive (*"Including* investigation for, initiation of, testimony for, or assistance in an action filed or to be filed)." 31 U.S.C. § 3730(h) (emphasis added). Moreover, in addition to plaintiff's allegation that she testified to the Grand Jury, she alleges that she "initiated a federal inquiry" into these defendants' conduct, Complaint at ¶ 20.1, an act explicitly protected under section 3730(h). Defendants' motion on this ground must be denied as well.

Defendants finally argue that plaintiff cannot state a cause of action against them because they were not her employer at the time of termination. They claim that such an allegation is required and direct the court to the complaint which alleges that after December 30, 1990, plaintiff was employed by CBM.[7] Because I do not agree with the defendants' premise that only the immediate past employer may be sued, I cannot agree with their conclusion.

■ Plaintiff has alleged that defendants Aiellos and R.S. Management influenced CBM to fire her. Complaint ¶ 17.[8] The question is whether an action lies against those who at the time of the conduct complained of caused plaintiff's discharge but were not then the plaintiff's immediate employer.

The statute provides relief to "any employee who is discharged ... by [her] employer because of lawful acts done by the employee" in furtherance of a qui tam action. 31 U.S.C. § 3730(h). It appears relatively clear that properly read, the statute defines the class of plaintiffs who may bring suit under 31 U.S.C. § 3730(h) rather than those against whom suit may be brought. That is to say that while it is true that under the statute a plaintiff must have been an employee, the statute says nothing about the class of defendants. Thus the defendants' reliance on section 3730(h) as requiring that defendants must have been plaintiff's employer is unfounded.

At oral argument, defendants contended that because the remedies provided for by the statute include reinstatement, a remedy that may only be granted if plaintiff's imme-

---

6. The legislative history makes clear that "[t]he protected activity under this section includes any good faith exercise of an individual on behalf of himself or others of any option afforded by this Act, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this act. Consequently, the Committee believes protection should extend not only to actual qui tam litigants, but those who assist or testify for the litigant, as well as those who assist the Government in bringing a false claims action. Protected activity should therefore be interpreted broadly." S.Rep. No. 345, at 34, *reprinted in* 1986 U.S.Code Cong. & Ad.News 5266, 5299.

7. "The CBM Group, Inc. assumed the contract between plaintiff and the Aiellos and R.S. Management Co. [and] Plaintiff agreed to work for The CBM Group, Inc." Complaint ¶ 16.

8. Specifically, that "[o]n or about March 8, 1991, defendants Frank and Beverly Aiello and R.S. Management Co. so dominated, controlled, influenced, and directed The CBM Group, Inc., as to cause The CBM Group, Inc. to terminate plaintiff's employment." Complaint ¶ 17.

diate employer is a party, it is only plaintiff's immediate past employer who may be held liable. I cannot agree. While it is true that section 3730(h) provides, inter alia, for reinstatement as a remedy, the section also provides a variety of forms of relief for any discrimination in the terms or conditions of employment suffered by a plaintiff and thus encompasses injury short of dismissal. Common sense instructs that the mandatory phrasing of the statute does not require an order of reinstatement when the plaintiff has not been discharged, or where plaintiff does not seek that remedy. Put another way, while it is clear that if plaintiff seeks reinstatement, her immediate past employer is an indispensable party; it does not follow that even under such circumstances the immediate past employer is the only proper party defendant. Furthermore, if plaintiff sought only monetary relief, it could be ordered against any defendant contributing to an injury cognizable under the statute, and under such circumstances, plaintiff's immediate employer would not be an indispensable party.

Nor does the court find persuasive defendants' argument that because the statute uses the term "employer" instead of "employers" it contemplates a single employer. Again, I note that the reference to "employer" contained in section 3730(h) is in the phrase defining the class of plaintiffs not defendants, and thus cannot be viewed as limiting the number of defendants. Moreover, it appears to this court that even if the statute were somehow read to limit the class of defendants rather than plaintiffs, these defendants may well be employers for the purposes of this statute.

If the statute were read to limit the class of defendants, the question would be who is an "employer" within the meaning of the statute. Assuming that the term employer had an ordinary meaning, a dubious proposition, see NLRB v. Hearst Publications, 322 U.S. 111, 120, 64 S.Ct. 851, 855, 88 L.Ed. 1170 (1944), abrogated by statute as recognized in NLRB v. United Insurance Co. of America, 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968), when used in federal statutes the term has been given the widest of readings, precluding application of any common definition. Moreover, as I further explain, Congress has ordained that the term employer as used in this statute be given a similar expansive reading.

The question is, of course, one of legislative construction. I begin by noting that the term "employer" has been given an expansive definition when used in federal statutes. See, e.g., Goldberg v. Whitaker House Cooperative Inc., 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961) (Cooperative employer of its members under Fair Labor Standards Act); Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) (food processor employer of common law independent contractors under FLSA); Hearst Publications, 322 U.S. at 111, 64 S.Ct. at 851 (newspaper employer of common law independent contractors Under National Labor Relations Act). Thus it seems clear that any common, or indeed, common law definition is not dispositive. Rather, as the high court has explained, in statutes of this type the remedial purpose of the statute counsels a broad reading. Id. at 124, 64 S.Ct. at 857. Whistleblower protection statutes are remedial in nature and thus should be liberally construed. Neal, 826 F.Supp. at 270. See also Erickson v. American Institute of Biological Sciences, 716 F.Supp. 908, 914 (E.D.Va.1989) (The definition of employer pursuant to section 3930(h) is construed broadly to include public as well as private sector entities). Furthermore, Congress manifested its intent that a broad reading be given to the term "employer." The legislative history provides that "[a]s is the rule under other Federal whistleblower statutes as well as discrimination laws, the definitions of 'employee' and 'employer' should be all-inclusive." S.Rep. No. 345, at 34, reprinted in 1986 U.S.Code Cong. & Ad.News 5299–300. This congressional admonition is, of course, consistent with the principal that "[a] legislative body generally uses a particular word with a consistent meaning in a given context." Mills Music, Inc. v. Snyder, 469

U.S. 153, 165 n. 31, 105 S.Ct. 638, 646 n. 31, 83 L.Ed.2d 556 (1985) (*quoting Erlenbaugh v. United States,* 409 U.S. 239, 243, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972)).

There is a well-developed body of law defining employers in connection with Title VII litigation. In accordance with the legislative intent that the courts refer to such cases in construing the qui tam statute, I turn to that body of law to determine if these defendants fall within section 3730's purview.[9]

The Ninth Circuit has specifically held in a Title VII context that a previous employer who interferes with an individual's subsequent employment opportunities may be held liable under the statute. *Gomez v. Alexian Brothers Hospital of San Jose,* 698 F.2d 1019, 1021 (9th Cir.1983). The courts have reasoned that a defendant need not be plaintiff's immediate past employer to be an employer for Title VII purposes, provided there is a connection between the defendant and plaintiff's employment and the defendant impedes plaintiff's employment opportunities with another employer.[10] *Id. See also Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1341 (D.C.Cir.1973) ("To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited").

The qui tam statute prohibits "any ... manner [of] discrimination." 31 U.S.C. § 3730(h). By a parity of reasoning to the Title VII cases, where the plaintiff has been impeded in her employment, she has suffered a form of discrimination forbidden by the statute, a harm similar to the harm suffered by a Title VII plaintiff, and the injury should be covered by the qui tam statute.

For all the above reasons, I conclude that the defendants' motion to dismiss premised on their not being plaintiff's immediate past employer must be rejected.

## IV

### ORDER

IT IS HEREBY ORDERED:

1. All reference to 42 U.S.C. § 1985 contained in plaintiff's complaint is ordered STRICKEN;

2. Defendants' motion to dismiss plaintiff's second claim under 31 U.S.C. § 3730(h) is DENIED; and

3. Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 9(b) is DENIED.

IT IS SO ORDERED.

9. In doing so, the court acknowledges that there is not a perfect fit between the two statutes. As noted above, section 3730(h) provides a cause of action to any "employee;" Title VII, on the other hand, provides a cause of action to any "individual." 42 U.S.C. § 2000e–2(a)(1). I reiterate that the question is not who can sue, the question addressed in the statutes, but who can be sued. In that regard, as the court explained above, the qui tam statute is silent. Nonetheless, assuming that the statute intends that only "employers" be sued, both section 3730 and 42 U.S.C. § 2000e–2(a)(1) use the same unadorned term: "employer," and there is no reason to develop different definitions of the same term because the term used in defining the class of plaintiffs differs.

10. "It is true there must be some connection with an employment relationship for Title VII protections to apply, but the connection with employment need not necessarily be direct. Title VII ... provides '[i]t shall be an unlawful employment practice for an employer [to discriminate]....' This language has been interpreted to encompass situations in which a defendant subject to Title VII interferes with an individual's employment opportunities with another employer." *Gomez,* 698 F.2d at 1021.