Denise **CHILDREE**, Plaintiff,

v.

**UAP/GA AG CHEM, INC. and Conagra Inc., Defendants.**

**Civ. A. No. 1:94–CV–1312–FMH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

June 20, 1995.

Steven Keith Leibel, David C. Ates, Steven K. Leibel & Associates, Atlanta, GA, Julian Webb, Office of Julian Webb, Donalsonville, GA, for plaintiff.

Thomas H. Christopher, Jeffrey A. Van Detta, Kilpatrick & Cody, Atlanta, GA, Thomas L. Dueber, Office of Thomas L. Dueber, Greeley, CO, for defendants.

**1557**

*ORDER*

HULL, District Judge.

Plaintiff Denise Childree files this action under the "whistle-blower" provision of the False Claims Amendments Act of 1986, 31 U.S.C. § 3730(h) (1994), and under the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3) (1994). Plaintiff's Complaint also includes an intentional infliction of emotional distress claim under state law. The essence of Plaintiff's claims are that Defendants terminated Plaintiff in retaliation for testifying in an administrative hearing before the United States Department of Agriculture ("DOA"), and for providing testimony potentially damaging to Defendant UAP in that hearing. Plaintiff also contends that Defendants conspired to deprive Plaintiff of her right to testify truthfully before the DOA.

The DOA administrative hearing involved charges that a third party, Varner/Bass Enterprises, had submitted claims for excessive amounts of money to the Agriculture Stabilization and Conservation Service. Varner/Bass is one of Defendant UAP's customers. Although the DOA cited the possible involvement of Defendant UAP in Varner/Bass's activities, no claims have been filed against Defendant UAP under the False Claims Act.

This action is before the Court on Defendants UAP and ConAgra's Motion for Summary Judgment [32–1], Defendant ConAgra's earlier Motion for Summary Judgment [13–1], Plaintiff's Motion for Leave to File Amended Complaint [22–1], Defendants' Motion to Amend Answers [23–1], Plaintiff's Revised Motion for Leave to File Amended Complaint [28–1], Plaintiff's Motion to Extend Time for Discovery [26–1], and Plaintiff's Motion to File Response Brief [41–1]. After reviewing the record in its entirety, the Court outlines the version of events most favorable to Plaintiff.

## I. *FACTS*

For many years, Plaintiff was employed by Defendant UAP/GA AG Chem. (hereinafter "Defendant UAP") in Defendant UAP's Donalsonville, Georgia office. Plaintiff alleges that in 1989 Defendant UAP prepared docu-

ments to allow some of Defendant UAP's customers to draw excessive amounts of money from the United States through the Agriculture Stabilization & Conservation Service (hereinafter "ASCS").

The ASCS reimburses farmers for monies expended in connection with various farming operations. Defendant UAP sells fertilizer, seeds, and related products to farmers. Once an entity like Defendant UAP bills these farmers for various products, the farmers then submit claims for reimbursements to the ASCS. However, the ASCS pays a maximum of $50,000 per claim. Varner/Bass returned a number of invoices received from Defendant UAP explaining that Plaintiff had incorrectly billed the invoices to Varner/Bass and that the invoices should have been billed to a number of other individuals. Defendants claim farmland is owned by one company but leased by different individuals and that the bills should have been invoiced to various other individuals.

Plaintiff contends that Varner/Bass and Defendant participated in a scheme whereby a UAP bill originally sent to Varner/Bass was returned and re-billed to several different individuals so that these several individuals could then submit claims to the ASCS. In this manner, Plaintiff alleges that Defendant UAP assisted Varner/Bass in circumventing the ASCS's $50,000 maximum reimbursement limit.

According to Plaintiff, she was asked to prepare the re-billings to be presented to the ASCS. Plaintiff further alleges that she refused to prepare the re-billings, and that the documents sat on her desk until Mr. Andrews, another employee, completed them. After the re-billings were completed by Mr. Andrews, Plaintiff copied the documents because they were represented as coming from her office. Plaintiff states that she had no "planned use" for the documents she copied, "None whatsoever."

Plaintiff raised her suspicions that Defendant UAP was engaging in illegal activity with Mr. Valentine, a credit manager with Defendant UAP. Plaintiff informed Mr. Valentine that she felt that preparing the re-billings was unethical and immoral, and that Defendant UAP was assisting its clients in obtaining excessive payments from the government. Plaintiff alleges Mr. Valentine stated, "Who is to say you wouldn't do it if given the opportunity."

Plaintiff then raised her suspicions with Mr. Bennett, another credit manager with Defendant UAP. Plaintiff asked Mr. Bennett what was going on with Varner/Bass. Mr. Bennett responded by saying that if he did not tell her, she would not know. Plaintiff then informed Mr. Bennett of her belief that Defendant UAP was assisting Varner/Bass in perpetrating a fraud on the United States Government. Mr. Bennett purportedly responded, "You said it, not me."

Plaintiff reported her suspicions to supervisors Mr. Mathis and Mr. Andrews. Plaintiff alleges Mr. Mathis stated, "This was done all over all the time by [Defendant UAP]. There was nothing to it, and [he would] take care of it." According to Plaintiff, she was asked to prepare and process the documents to fulfill Varner/Bass's request for re-billings, but she refused. The unprepared re-billings remained on her desk until they were prepared by Mr. Andrews.

In 1989, Eloise Taylor, a local ASCS official, visited Defendant UAP's Donalsonville office. Ms. Taylor was met by Plaintiff and Mr. Mathis. Ms. Taylor requested verification of the validity of the re-billings submitted to the ASCS on behalf of Varner/Bass. Plaintiff reportedly looked at Mr. Mathis, and Mr. Mathis instructed her to tell the truth. Plaintiff informed Ms. Taylor that she could not verify the validity of the re-billings. Plaintiff then relayed to Ms. Taylor her version of the events involving the preparation of the Varner/Bass documents. Ms. Taylor asked Plaintiff to prepare a written statement containing the information Plaintiff had relayed orally. Plaintiff complied with this request.

After Ms. Taylor's visit, Plaintiff made copies of all the documents Ms. Taylor sought to verify. Plaintiff contends that she did so with the permission of her supervisor, Mr. Mathis. Plaintiff alleges Mr. Mathis told Plaintiff that she should "do whatever [she] had to do to protect [herself]." Plaintiff then copied the documents, took them to her home, and hid them there in 1989. Plaintiff "never" took the documents out of the box again until she was subpoenaed to testify.

Four years later in 1993, Plaintiff was subpoenaed to testify before the United States Department of Agriculture, concerning farming operations of Varner/Bass. The *subpoena duces tecum* directed Plaintiff to produce the 1989 documents.

On June 24, 1993, Plaintiff testified before the Department of Agriculture about the 1989 Varner/Bass documents. In attendance at the hearing was Gary Callahan, an officer with Defendant UAP. Plaintiff states that she reluctantly testified about the re-bills and Defendant UAP's "involvement in the attempt to defraud the United States Government."

During a break at the hearing, Plaintiff alleges that Mr. Callahan went into the room where the witnesses were sequestered and threw a yellow pad on a table and told Mr. Mathis, "these were the issues, that [Plaintiff] had just blown the whole thing, and that [Plaintiff] didn't know how to handle business." Denying this, Defendants contend that no one threatened Plaintiff in connection with the hearing, and that Plaintiff was advised only to tell the truth as to what actually happened.

On July 1, 1993, Plaintiff was suspended from her employment without pay. Plaintiff was terminated from her position on July 9, 1993. In the letter informing Plaintiff of her termination, Defendant UAP informed Plaintiff that she was terminated for removing confidential customer files from UAP's premises without authorization to do so.

On August 10, 1994, the National Appeals Division ("NAD") of the DOA issued a finding that Varner/Bass Enterprises and a number of farmers and farming operations participated in a scheme or device designed to evade payment limitations. That ruling is currently being appealed. The NAD named Defendant UAP as having assisted in and participated in the scheme, although neither Defendant UAP nor ConAgra was a party to the DOA proceeding. Since Defendants were not parties to the DOA hearing, Defendants did not produce evidence on their behalf or have the opportunity to cross-examine witnesses. To date, the NAD has never asked Defendants for an explanation of any credits or rebillings allegedly made.

## II. *PROCEDURAL BACKGROUND*

On May 18, 1994, Plaintiff filed this Complaint against Defendants UAP/GA AG Chem., Inc. and ConAgra, Inc. Plaintiff alleges that Defendant UAP threatened her to keep quiet prior to her testimony before the Department of Agriculture, and that Defendant UAP and Defendant ConAgra jointly decided to terminate Plaintiff after she testified before the DOA. Defendant UAP is a subsidiary of ConAgra, Inc.

On September 15, 1994, Defendant ConAgra filed a Motion for Summary Judgment [13–1], arguing that even assuming Plaintiff's allegations were true, that Plaintiff was an employee of UAP and not ConAgra, and that Defendant ConAgra played no role in threatening Plaintiff prior to her testimony or in the decision to terminate Plaintiff. Plaintiff's Response [15–1] pointed out that discovery had not been completed and that Plaintiff did not yet have the opportunity to investigate what role Defendant ConAgra may have had in Plaintiff's termination. In its Reply [16–1] to Plaintiff's Response, Defendant ConAgra consented to delay ruling on its Motion until the end of discovery.

On March 6, 1995, Defendants UAP and ConAgra filed a joint Motion for Summary Judgment [32–1]. Defendants contend that even assuming Plaintiff's allegations to be true, Plaintiff has engaged in no activity that is protected by the "whistle-blower" provision of the False Claims Act. Defendants also assert that Plaintiff's Complaint fails to state a claim under the Ku Klux Klan Act, because Plaintiff fails to allege that she was the victim of any class-based discrimination. Defendants further claim that there is no evidence to support Plaintiff's state law cause of action.

## III. *DISCUSSION*

### A. *SUMMARY JUDGMENT STANDARD*

Federal Rule of Civil Procedure 56(c) defines the standard for summary judgment as follows: courts should grant summary judgment when "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The

general rule of summary judgment in the Eleventh Circuit states that the moving party must show the court that no genuine issue of material fact should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606–09 (11th Cir.1991). Unless the movant for summary judgment meets its burden under Federal Rule of Civil Procedure 56, the obligation of the opposing party does not arise even if no opposing evidentiary material is presented by the party opposing the motion. *Clark*, 929 F.2d at 607–08.

 While all evidence and factual inferences are to be viewed in a light most favorable to the nonmoving party, *Rollins v. Tech-South, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510.

 Where neither party can prove either the affirmative or the negative of an essential element of a claim, the movant meets its burden on summary judgment by showing that the opposing party will not be able to meet its burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In *Celotex*, the Supreme Court interpreted Federal Rule of Civil Procedure 56(c) to require the moving party to demonstrate that the nonmoving party lacks evidence to support an essential element of its claim. Thus, the movant's burden is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

## B. SCOPE OF THE WHISTLE–BLOWER PROTECTION IN SECTION 3730(h) OF THE FALSE CLAIMS ACT

Plaintiff alleges that Defendants terminated Plaintiff's employment as retaliation for Plaintiff's removing documents and testifying in the DOA hearing about the reimbursement claims submitted by Varner/Bass Enterprises to ASCS. According to Plaintiff, Defendants' alleged retaliatory action violated the "whistle-blower" provision in Section 3730(h) of the False Claims Act. *See* 31 U.S.C. § 3729 *et seq.* (1994).

Section 3729 of the False Claims Act provides that any person making or submitting false claims to the government shall be liable for substantial penalties and treble damages. 31 U.S.C. § 3729 (1994).[1] Section 3730 of the

---

1. Section 3729 of the False Claims Act states:

**§ 3729. False Claims**
(a) **Liability for Certain Acts.**—Any person who—
(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government, or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government;
(3) conspires to defraud the government by getting a false or fraudulent claim allowed or paid;
(4) has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered,

less property than the amount for which the person receives a certificate or receipt;
(5) authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;
(6) knowingly buys, or receives as a pledge or an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge the property; or
(7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,
is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the

False Claims Act provides that the United States Government, or a private citizen, may bring a cause of action for false claims against any entity that makes false claims against the government in violation of Section 3729. 31 U.S.C. § 3730(a), (b) (1994). Section 3730(a) further provides that "[t]he Attorney General diligently shall investigate a violation under [S]ection 3729. If the Attorney General finds that a person has violated or is violating [S]ection 3729, the Attorney General may bring a civil action against the person." 31 U.S.C. § 3730(a) (1994). If the Attorney General does not bring a civil action, Section 3730(b) provides that a private person may bring a *qui tam* action in the name of the government. 31 U.S.C. § 3730(b) (1994).[2]

█ The purpose of the False Claims Act is to discourage fraud against the government. The fraternal twin of this purpose is to encourage those with knowledge of fraud to come forward. H.R.Rep. No. 660, 99th Cong., 2d Sess. 22 (1986), U.S.Code Cong. & Admin.News 1986, pp. 5266, 5287. Accordingly, in enacting the False Claims Amendments Act of 1986, Congress provided for a whistle-blower provision in Section 3730(h) to protect employees, who come forward, from adverse employment decisions. Section

3730(h) protects employees who bring *qui tam* actions under Section 3730(b) or who engage in conduct "in furtherance of an action" under the False Claims Act. 31 U.S.C. § 3730(h). Section 3730(h) outlines the scope of this whistle-blower protection as follows:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. . . .

31 U.S.C. § 3730(h) (1994).[3]

Plaintiff concedes that no actions for false claims have been brought against Defendants either by the government or by Plaintiff. Plaintiff admits that she never knew about the False Claims Act and never filed or contemplated filing a claim under the False Claims Act. Plaintiff acknowledges that she never initiated an internal investigation or took any action beyond copying the documents in 1989 and testifying reluctantly under subpoena in 1993. However, Plaintiff

---

amount of damages which the Government sustains because of the act of that person . . .
. . . .

(c) **Claim defined.**—For purposes of this section, "claim" includes any request or demand, whether under contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.
31 U.S.C. § 3729 (1994).

2. Under Section 3730(b) of the False Claims Act, a person may bring a *qui tam* action pursuant to the Act by filing a complaint with the court, and by serving a copy of the complaint with a written disclosure of substantially all material evidence and information on the United States Government in a manner consistent with Federal Rule of Civil Procedure 4(d)(4). The complaint shall be filed in camera, and shall remain under seal for 60 days. Before the expiration of the 60 days, the government shall either proceed with the action, or notify the court that it declines to take over the action. If the government declines

to take over the action, the *qui tam* plaintiff shall have the right to conduct the action. 31 U.S.C. § 3730(b) (1994).

3. The full text of Section 3730(h) reads:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this action, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.
31 U.S.C. § 3730(h) (1994).

contends that the courts have interpreted liberally the whistle-blower provision to cover employees whose conduct ultimately assisted in the investigation of a false claim to the government, *even if* the employee was not aware of her assistance or of the False Claims Act at the time of her conduct.

In response, Defendants assert that Plaintiff is clearly not protected by the whistle-blower provision because no claim has been filed or is to be filed under the False Claims Act by the government or by Plaintiff. Plaintiff admits that she never knew about the False Claims Act and never contemplated filing a *qui tam* action. Also, Defendants stress that Plaintiff's conduct in removing the documents in 1989 and in testifying under subpoena before the DOA against Varner/Bass is not, assuming all of Plaintiff's allegations to be true, conduct protected by the whistle-blower provision in Section 3730(h) of the False Claims Act.

Thus, the main issue is whether Plaintiff's conduct here falls within the scope of the whistle-blower protection in Section 3730(h) of the False Claims Act.

### 1. *Legislative History of Section 3730(h) of the False Claims Act*

The legislative history of the whistle-blower provision itself affords some insight into the scope of Section 3730(h). Congress indicated that Section 3730(h) was intended as a narrow remedy for *qui tam* plaintiffs and those who assist them or the government in filing suits under the Act. *See* 132 Cong. Rec. 22340 (1986) ("In addition, the bill provides 'whistle-blower protection' to *qui tam* plaintiffs who suffer reprisals."); 132 Cong. Rec. 22336 (1986) (whistle-blower protection provided to those who report fraud "in conjunction with false claims prosecutions."). Other portions of the legislative history support a broad construction of what constitutes such conduct. *See* 132 Cong.Rec. 29322 (1986) (whistle-blower protection for action "in any way connected with a person's activity under this law."). Though this has created some confusion among courts interpreting the language of the statute, this Court finds that the legislative history of Section 3730(h) is fairly consistent in outlining the purpose of the Section.

■ At least one court has found the above portions of the legislative history of Section 3730(h) contradictory, finding that the first two portions of the legislative history cited above support a narrow construction of Section 3730(h), while the latter portion supports a broad construction. *Neal v. Honeywell,* 826 F.Supp. 266, 271 n. 5 (N.D.Ill.1993). However, this Court finds that the legislative history is not contradictory, and that the legislative history can be harmonized to support an overall purpose. Section 3730(h) was passed to remove some of the hurdles which may obstruct the bringing of a False Claims Act action. It was designed to do so by protecting employees who engage in a broad range of conduct, as long as that conduct is in some way related to a False Claims Act action.

The most direct statement addressing the scope of Section 3730(h) is a Senate report discussing the reach of Section 3730(h)'s remedy. The Senate report states:

> Consequently, the Committee believes protection should extend not only to actual qui tam litigants, but those who assist or testify for the litigant, as well as those who assist the Government in bringing a false claims action. Protected activity should therefore be interpreted broadly.

Sen.Rep. No. 345, 99th Cong., 2d Sess. 34, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5299. This report supports the conclusion that even though protected activity should be construed broadly, such activity must be in some way related to a false claims action under the False Claims Act.

In debates prior to the enactment of the False Claims Amendments Act, members of Congress repeatedly noted that the False Claims Act was the primary vehicle through which the government could file a civil action seeking penalties from those who attempt to defraud the government. 132 Cong.Rec. H9382 (1986) (statement of Rep. Glickman); 132 Cong.Rec. S15515 (1986) (statement of Sen. Grassley). Thus, Congress passed measures designed to strengthen the government's ability to employ Section 3730(a) & (b) actions in order to seek civil redress for the government. The direct results of the debates were the passage of the whistle-blower

provision, and an increase in the penalty the government can receive pursuant to civil actions filed under the Act.[4] The only way that the purpose of strengthening the government's ability to bring False Claims Act actions can be reconciled with the enactment of the whistle-blower provision is if there was some nexus between the protection of Section 3730(h) and the filing of a False Claims Act action.

The language of the statute itself is evidence of Congress's intent to tie the whistle-blower protection of Section 3730(h) to the filing of a False Claims Act action. Section 3730(h) uses the word "action" twice in defining the scope of its protection. The statute reads "any employee who is discharged . . . because of lawful acts done by the employee . . . in furtherance of an action under this section, including [various conduct] in assistance in an action . . . under this section." 31 U.S.C. § 3730(h) (1994). Throughout Section 3730, Congress used the word "action" to refer to a civil action brought under subsections (a) or (b) of Section 3730. There is no reason to suggest that Congress's use of the word action in Section 3730(h) means anything different than what the word "action" means as it is used in other portions of Section 3730. To the contrary, there is a presumption that a word (or words) mean the same thing throughout a statute. *CIR v. Keystone Consol. Indus., Inc.*, — U.S. ——, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993). Accordingly,

the statute itself is the best evidence that Congress sought to tie the protection of Section 3730(h) to a False Claims Act action.[5]

2. *Plaintiff's Conduct is Not Protected By Section 3730(h)*

Taking Plaintiff's version of the facts as true, the Court finds that Plaintiff's conduct is not covered by the whistle-blower provision in Section 3730(h). Plaintiff constructively admits that her conduct was not in furtherance of an action filed or to be filed by Plaintiff under Section 3730(b). Rather, Plaintiff stresses that her conduct should be construed to be in assistance to an action filed or to be filed by the government under Section 3730(a). The Court finds that Plaintiff's conduct was not in furtherance of an action filed or to be filed by the government under Section 3730(a) for several reasons.

First, Plaintiff's conduct is not covered by the language of Section 3730(h), which encompasses only conduct by an employee "in furtherance of an action" filed or to be filed under the False Claims Act. 31 U.S.C. § 3730(h) (1994). Section 3730(h) continues that such conduct includes "investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." The language of Section 3730(h), even broadly construed, clearly provides that Plaintiff, at a minimum, must show some nexus between her conduct and the furtherance of a potential False Claims Act action. *X Corp. v. Doe*, 816 F.Supp. 1086,

4. Under the current law, the government can recover $5,000–$10,000 for every fraudulent submission. Under the old law, the maximum penalty was $2,000.

5. In *Betchel Constr. Co. v. Secretary of Labor*, No. 94–CV–4067 (11th Cir. Apr. 20, 1995), the Court highlighted the Secretary's interpretation of specific language in the Energy Reorganization Act. The Act provides, in relevant part, that employers could not discriminate against an employee because that employee has:

(1) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this chapter . . .;
(2) testified or is about to testify in any such proceeding; or
(3) assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other manner in such a proceeding or in any other action to carry out the purposes of this chapter. . . .

42 U.S.C. § 5851(a) (1994). The Secretary interpreted the language "in any other action" to include the filing of internal complaints because, otherwise, the language would be merely surplusage. In contrast, there is no such superfluous language in the False Claims Act. The only action referred to is the civil action referred to in subsections (a) and (b) of Section 3730.

Also, in *Betchel*, the Court noted that the Secretary of Labor interpreted the whistle-blower provision in the Energy Reorganization Act as protecting internal whistle-blowers, and that the Secretary's interpretation was subject to deference because the Court was required to "defer to [the Secretary's] interpretation of [the statute] committed to [his agency] for administration if, absent a clear and unambiguous indication of congressional intent, the agency has construed the statute reasonably." *Betchel, supra* (citing *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

1095–96 (E.D.Va.1993); *Hardin v. DuPont Scandinavia (ARA–JET)*, 731 F.Supp. 1202, 1205 (S.D.N.Y.1990).[6]

In dismissing the plaintiff's claims in *Hardin*, the district court held that the plaintiff failed to state a claim under Section 3730(h) because Plaintiff's alleged loss of commissions "was the result of her refusal to participate in the alleged scheme, not the results of steps taken in furtherance on the action." *Hardin*, 731 F.Supp. at 1205. Similarly, in granting summary judgment on the plaintiff's claims in *X Corp.*, the district court held that the employee's actions in secretly copying and removing documents from X Corp.'s premises was not in furtherance of any action filed or to be filed under the False Claims Act. The employee did not inform anyone of that clandestine activity. Even though the employee mentioned his concerns about potential liability under the False Claims Act, the employee took no action to initiate a claim or to assist the government in initiating a claim. *X Corp.*, 816 F.Supp. at 1096.[7]

Second, Plaintiff provided testimony in a hearing before the Department of Agriculture. The hearing before the Department of Agriculture is not a False Claims Act action under Section 3730(a). Plaintiff's brief surmises that the government still may bring a False Claims Act action. Quite the contrary, the government has not filed a False Claims Act action under Section 3730(a), but instead has sought redress already through administrative procedures within Department of Agriculture. The DOA found that Varner/Bass Enterprises defrauded the government and assessed a civil penalty against Varner/Bass. Plaintiff speculates only that the government still may pursue a False Claims Act action, but the evidence shows that the government has chosen the administrative remedy route as opposed civil action under the False Claims Act. There is no evidence that the government is considering filing a False Claims action.

Third, even assuming *arguendo* that the government was considering filing a False Claims Act action, Plaintiff's conduct was not in furtherance of any such potential action. In her deposition, Plaintiff states that she relayed to two of her superiors her belief that one of Defendant UAP's clients was trying to defraud the government. Plaintiff refused to become involved in the alleged scheme. However, Plaintiff never performed any affirmative act to expose any alleged fraud. *Hardin v. DuPont Scandinavia (ARA–JET)*, 731 F.Supp. 1202, 1205 (S.D.N.Y.1990) (refusing to participate in employer's scheme not enough). When Ms. Taylor, of the ASCS, visited Plaintiff, Plaintiff gave a statement to Ms. Taylor, who was attempting to verify the validity of documents submitted by Varner/Bass, but Plaintiff never initiated the contact with the ASCS and never filed a complaint with the ASCS alleging that Defendant UAP or Varner/Bass was attempting to defraud the government. Plaintiff also never filed any complaint internally, nor did she contact any government official to convey her suspicions that Defendant UAP or Varner/Bass was engaging in fraudulent activity. All Plaintiff did was copy the documents she believed to be fraudulent, took the documents home, and stored them there for four years. *X Corp. v. Doe*, 816 F.Supp. 1086, 1095–96 (E.D.Va.1993) (secretly copying and removing documents, warning employer about False Claim Act liability, and circulating memoranda concerning the False Claims Act is not enough).

After taking the alleged fraudulent documents home, Plaintiff did nothing for four years. Plaintiff, again, did not file any internal complaints or any complaints with any government agency. Plaintiff also did not file a *qui tam* action,[8] initiate a federal inqui-

---

**6.** Some courts have held that even actions shown to be "in furtherance of an action to be filed under the Act" are "insufficient" as a matter of law because "[t]he qui tam action must actually be filed." *See, e.g., Casarez v. Delco Systems Operations*, No. 92–CV–6844–AWT, 1993 WESTLAW 169255 (C.D.Cal. Mar. 1, 1993).

**7.** Other federal courts have held that even "internal" whistle-blowing is not protected under Section 3730(h) and other federal statutes. *See, e.g.,*

*Brown & Root Inc. v. Donovan*, 747 F.2d 1029, 1031–36 (5th Cir.1984) (Energy Reorganization Act, 42 U.S.C. § 5851(a)); *Casarez v. Delco Systems Operations*, No. 92–CV–6844–AWT, 1993 WESTLAW 169255 (C.D.Cal. Mar. 1, 1993).

**8.** Plaintiff contends that she is barred from filing a *qui tam* action because the government is already a party to the DOA administrative hearing involving the same false claims. *See* 31 U.S.C. § 3730(e)(3) (1994).

ry into Defendant UAP's conduct, or investigate any conduct on the part of Defendant UAP. Four years after Plaintiff copied the documents, Plaintiff was subpoenaed to appear in a hearing before the Department of Agriculture. Plaintiff produced the documents she copied pursuant to a subpoena. Moreover, Plaintiff states in her deposition that she "reluctantly testified" about the very events she felt constituted a fraud against the government. Consequently, the conduct in which Plaintiff did engage was compelled.

■■■■ Section 3730(h) was designed to protect those who come forward with evidence of fraud against the government. H.R.Rep. 660, 99th Cong., 2d Sess. 22 (1986); *Neal v. Honeywell, Inc.*, 826 F.Supp. 266, 269 (N.D.Ill.1993). Section 3730(h) is not intended to protect an employee who merely refused to participate in the scheme and kept the documents in a box at home for four years until subpoenaed and required to testify and produce them.

Finally, in any event, Plaintiff's testimony before the Department of Agriculture is not itself protected conduct. Testimony provided at a hearing before the DOA is not testimony in a False Claims Act action. Further, there is no evidence from which the Court can draw a nexus between this DOA hearing and a potential False Claims Act action to be filed in the future. Thus, there is no evidence from which the Court can draw a nexus between Plaintiff's testifying at a hearing before the DOA and a potential False Claims action.[9] Also, Plaintiff admits that she never knew about the existence of the False Claims Act and never intended to initiate any False Claims Act action. There is no evidence that Plaintiff copied the documents to assist the government in any way. Plaintiff admits she copied the documents but had no planned use for the documents, "None whatsoever."

In short, for any of these reasons alone, Plaintiff's conduct is not covered under Section 3730(h).

### 3. Plaintiff's Cases Do Not Dispense with the Requirement of a Nexus Between Plaintiff's Conduct and a False Claims Act Action

Plaintiff cites several cases holding that Section 3730(h) should be construed broadly. *Neal v. Honeywell*, 826 F.Supp. 266 (N.D.Ill. 1993), *aff'd*, 33 F.3d 860 (7th Cir.1994); *Clemes v. Del Norte County Unified School Dist.*, 843 F.Supp. 583 (N.D.Cal.1994); *U.S. ex rel. Kent v. Aiello*, 836 F.Supp. 720 (E.D.Cal.1993). However, none of the cases has dispensed with the requirement that there be some relationship between the employee's conduct and the filing, or potential filing, of a False Claims Act action. In *Neal v. Honeywell*, 826 F.Supp. 266 (N.D.Ill.1993), *aff'd*, 33 F.3d 860 (7th Cir.1994), a False Claims Act settlement was reached before the action was filed. The plaintiff employee discovered that her employer was falsifying ballistics test data and delivering defective ammunition to the United States Army. *Id.* at 267. The plaintiff reported the conduct to her supervisors pursuant to Honeywell's internal reporting procedures. Honeywell notified the government and conducted an internal investigation. The results of the investigation were shared with the Army, and Honeywell reached a settlement agreement with the Army specifically under Section 3730(a) of the False Claims Act. *Id.*

The Seventh Circuit affirmed but questioned the district court's quick conclusion that even though the plaintiff could not prevail under the language of the statute, the whistle-blower provision must be construed broadly. *Neal v. Honeywell*, 33 F.3d 860, 862 (7th Cir.1994). The Seventh Circuit characterized the enactment of the Section 3730(h) as a balancing of interests: the government's interest in obtaining information by relieving employees of fear, versus the employer's interest in managing its own labor force. *Id.* Noting that Congress made a choice to favor the former interest over the latter, the Seventh Circuit concluded that the question is not "which way the statute points but how far it directs one to go in that direction." *Id.* The Court continued that

9. This is especially so under the facts of this case, where Plaintiff was compelled to testify before the DOA. To find that such is protected conduct under Section 3730 would in essence create a

sort of quasi-witness immunity for employees who testify in any administrative hearing. Congress did not express such a purpose in enacting Section 3730(h).

"after identifying the statute's accommodation of competing interests," no principle authorizes a court to give the favored party "a little more." *Id.*[10]

In any event, the *Neal* employee filed an internal complaint and the employer shared the results of that internal investigation with the government and settled with the government under Section 3730(a) of the False Claims Act. If anything, *Neal* supports Defendants' position here that Plaintiff's conduct is not covered by Section 3730(h) since Plaintiff admits she never intended to bring a False Claims Act action, never planned to use the documents she copied for anything, and only testified at a DOA hearing under a subpoena, i.e., compulsory process.

Plaintiff also relies upon two California district court cases, *Clemes v. Del Norte County Unified School Dist.*, 843 F.Supp. 583 (N.D.Cal.1994) and *U.S. ex rel. Kent v.*

*Aiello*, 836 F.Supp. 720 (E.D.Cal.1993). However, the employees' conduct in both cases was distinctly different from Plaintiff's here. In *Clemes*, the plaintiff complained to the county district attorney and the Department of Justice of false claims against the government. The plaintiff, thereafter, experienced reactions from the defendants that the plaintiff considered to be retaliation. The defendants filed a motion to dismiss, arguing that the filing of a *qui tam* action is a prerequisite to the filing of a 3730(h) action. The district court denied the defendants' motion, finding no support for such a proposition in the language of the statute. *Clemes*, 843 F.Supp. at 595–96. The Court reasoned that the statute expressly covers conduct in furtherance of a False Claims Act action, and contains no requirement that employees file a *qui tam* action or exhaust the procedural requirements of Section 3730(b). *Id.*[11]

**10.** The Seventh Circuit also noted that Congress will strike this balance in many different ways in different situations. *Id.* at 863. Therefore, the Seventh Circuit implied that the district court's conclusion that all federal whistle-blower provisions should be construed broadly was pre-mature. The Court noted that there is no rule that all statutes addressing related topics mean the same thing, "let alone that all statutes should receive the reading most favorable to whistle-blowers." *Id.* To be sure, there is a long-standing principle that different language implies different meaning. *See Fogerty v. Fantasy,* —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (rejecting the conclusion that all fee-shifting statutes should be treated as minor variations on 42 U.S.C. § 1988).

Notwithstanding its skepticism towards the district court's analysis, the Seventh Circuit affirmed the district court's opinion, finding that the plaintiff's actions were covered by the literal terms of the statute. *Neal*, 33 F.3d at 863–64. The Court noted that the language of the statute protects activity related to "an action filed, or to be filed ... under this section." *Id.* at 863 (quoting 31 U.S.C. § 3730(h) (1994)). Focusing on the "to be filed" language, the Court noted that the plaintiff filed a complaint which led to an internal inquiry, which in turn led to a federal inquiry. Before an action was filed, the Government and Honeywell reached a settlement agreement under Section 3730(a). *Id.*

In *Neal*, the question then became whether the "to be filed" language should be construed to provide protection for conduct which eventually resulted in an action being filed under Section 3730(h), or, rather, should the conduct be viewed objectively at the time it occurred. In other words, is the filing of a 3730(a) or (b) action a

prerequisite to the filing of a 3730(h) action, or is the requirement merely that a 3730(a) or (b) action be distinctly possible at the time the employee engaged in his or her "protected" conduct. The Seventh Circuit decided that, considering the overall purpose of the statute, and the choice of words used in the statute, that Section 3730 should be interpreted to protect employee conduct occurring at a point when litigation was (or is) a distinct possibility. *Id.* at 864. *But see Casarez v. Delco Systems Operations,* No. 94–CV–6844–AWT, 1993 WL 169255 (C.D.Cal. Mar. 1, 1993) (holding that the filing of a *qui tam* action is an absolute prerequisite to the filing of a Section 3730(h) action).

**11.** *Clemes* is the only case Plaintiff cites that accorded an employee protection under Section 3730(h) where a Section 3730 action had not been filed or was not pending. *See Clemes v. Del Norte County Unified School Dist.*, 843 F.Supp. 583 (N.D.Cal.1994) (recognizing that no action had been filed or was pending). However, *Clemes* was decided in the context of a motion to dismiss. A motion to dismiss must be denied unless it is clear from the complaint and allegations that the plaintiff can prove no set of facts which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). All inferences that can be drawn from the allegations in the plaintiff's complaint are to be construed in favor of the plaintiff. *Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465 n. 6, 10 L.Ed.2d 678 (1963). The fact that the plaintiff's complaint in *Clemes* alleged that the plaintiff complained to the Department of Justice arguably creates an inference that the plaintiff sought to initiate a False Claims Act action. According-

In *Aiello*, the plaintiff-employee filed a *qui tam* action against the defendants, as well as a retaliatory discharge action under Section 3730(h). *Aiello*, 836 F.Supp. at 723. The plaintiff alleged that the defendants terminated her because of testimony that she gave before a grand jury. The plaintiff also alleged that she initiated a federal inquiry into the defendants' conduct. The defendants filed a motion to dismiss the plaintiff's Section 3730(h) claim, arguing that the plaintiff failed to allege that an action was "filed or to be filed" under Section 3730(b). The defendants also argued that Section 3730 does not protect employees who provide testimony to a grand jury. *Id.*

The district court denied the defendants' motion on two grounds. First, the district court noted that even though the plaintiff failed to allege that a Section 3730(b) action was "filed or to be filed," the defendants' argument must be rejected because the plaintiff had actually filed a *qui tam* action under Section 3730(b). *Id.* at 724. Second, after prophesying that Section 3730(h) does protect employees who provide testimony to a grand jury, the court determined that the plaintiff's allegation that she initiated a federal inquiry into the defendants' conduct was enough to invoke the protection of Section 3730(h). *Id.*[12]

Again, the plaintiff employees' conduct in these two California cases is distinctly different from Plaintiff's conduct in this case. In both cases, the California plaintiffs took affirmative steps to initiate a governmental inquiry, by contacting the district attorney and Department of Justice in *Clemes*, and by actually filing a *qui tam* action in *Aiello*. In contrast, Plaintiff copied the documents only because they were coming out of her office and admitted she had no use for the documents at that time. In fact, Plaintiff did nothing with these documents until she was subpoenaed by the DOA to produce them

and testify four years later. The cases cited by Plaintiff do not support Section 3730(h) coverage for Plaintiff's conduct here.

## C. PLAINTIFF'S SECTION 1985(3) CLAIM

Plaintiff also raises a claim under the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3) (1994). Plaintiff complains that Defendants conspired to deprive her of the right to testify before the Department of Agriculture. Plaintiff alleges that Defendants conspired to retaliate against Plaintiff for testifying before the DOA, and that Defendants' decision to terminate Plaintiff was an act in furtherance of Defendants' conspiracy. Plaintiff complains that she has suffered severe emotional distress due to Defendants' alleged conspiracy.

In order to state a claim under Section 1985(3), a plaintiff must show that she is a victim of some racial or perhaps other class-based discrimination as follows:

(1) A conspiracy;

(2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws;

(3) an act in furtherance of the conspiracy;

(4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Lucero v. Operation Rescue of Birmingham,* 954 F.2d 624 (11th Cir.1992). Defendants contend that Plaintiff is not entitled to relief under Section 1985(3) because she can not make an adequate showing under the second element outlined above. More specifically, Defendants argue that Plaintiff is not a member of a protected class for the purposes of Section 1985(3). Plaintiff counters that

---

ly, even in *Clemes*, Plaintiff can find no support for her proposition that she is protected by Section 3730(h) where her conduct bears no relationship to the potential filing of a False Claims Act action.

**12.** Another decision interpreting the language of Section 3730(h) is *Rehman v. ECC Int'l Corp.,* No. 90–CV–425–ORL–22, 1993 WL 85758, 1993 U.S. Dist. LEXIS 20765 (M.D.Fla. Mar. 4, 1993).

In *Rehman*, the defendant filed a motion for summary judgment on the plaintiff's Section 3730(h) claim, arguing that the plaintiff had not given the defendant any notice that the plaintiff was performing any actions pursuant to the Section 3730(b). The court denied the defendant's motion, reasoning that it would be anomalous "to protect such a broad range of conduct and also impose a strict requirement that prior notice be given of a qui tam claim." *Id.* at *2.

"whistle-blowers" should be a protected class for the purposes of Section 1985(3).

■ Under Section 1985(3), Plaintiff must show that she was the victim "of some racial, or perhaps otherwise class-based, invidiously discriminatory animus...." *Burrell v. Board of Trustees of Ga. Military College*, 970 F.2d 785, 794 (11th Cir.1992); *Lucero*, 954 F.2d at 628 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). In support of her position that whistle-blowers are a protected class, Plaintiff relies primarily on *Lapin v. Taylor*, 475 F.Supp. 446 (D.Haw.1979), which expressly extended Section 1985(3) coverage to whistle-blowers. However, a number of circuit courts have held Section 1985(3) does not apply to whistle-blowers and have expressly rejected the *Lapin* decision. *See Garrie v. James L. Gray, Inc.*, 912 F.2d 808 (5th Cir.1990), *cert. denied*, 499 U.S. 907, 111 S.Ct. 1108, 113 L.Ed.2d 218 (1991) (expressly rejecting *Lapin*); *Deubert v. Gulf Federal Savings Bank*, 820 F.2d 754 (5th Cir.1987) (rejecting attempt to transform Section 1985(3) into general "whistle-blower" statute); *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir.1985) (rejecting *Lapin*); *Hicks v. Resolution Trust Corp.*, 767 F.Supp. 167 (N.D.Ill. 1991), *aff'd*, 970 F.2d 378 (7th Cir.1992) (rejecting *Lapin*); *Pope v. Bond*, 641 F.Supp. 489 (D.D.C.1986) (rejecting *Lapin*).

Plaintiff also directs the Court to a number of cases decided in other circuits where courts have extended Section 1985(3) protection into non-racial contexts.[13] However, none of these cases are from the Eleventh Circuit, where for over 120 years Section 1985(3) has not yet been extended beyond a racial class. The Eleventh Circuit recently rejected an attempt to apply the Ku Klux Klan Act to activities of abortion clinic pro-

testers. *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624 (11th Cir.1992). In *Burrell v. Board of Trustees of Ga. Military College*, 970 F.2d 785 (11th Cir.1992), the Eleventh Circuit held that the plaintiff could not sue under Section 1985(3), pointing out that a claim under section 1985(3) must allege a "class-based, invidiously discriminatory purpose behind the defendant's action" and "[t]his narrow intent requirement erects a significant hurdle for Section 1985(3) plaintiffs." *Id.* at 794. In *Faucher v. Rodziewicz*, 891 F.2d 864 (11th Cir.1990), the Eleventh Circuit specifically reserved the question whether Section 1985(3) does or does not apply to gender-based discrimination for another day. *Id.* at 871 n. 4.

The Supreme Court recently reviewed again the issue whether Section 1985(3) applies in non-racial contexts. *See Bray v. Alexandria Women's Health Clinic*, —— U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (holding that women seeking an abortion is not a protected class under Section 1985(3)). In *Bray*, the Supreme Court noted that whatever the precise meaning of "class" may be beyond race, it "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the [Section] 1985(3) defendant disfavors." *Id.* at ——, 113 S.Ct. at 759. The Eleventh Circuit has not revisited the issue of the scope of Section 1985(3)'s protection since *Bray*.

■ Even assuming Section 1985(3) can be applied in some non-racial contexts, this Court finds that Plaintiff, as an alleged whistle-blower, is not a victim of some "otherwise class-based invidiously discriminatory animus." The Court finds that "whistle-blowers" instead merely fall within *Bray's* "group of individuals who share a desire to engage in conduct the Section 1985(3) defendant disfavors."[14] The Court grants Defendants' Mo-

---

**13.** *See Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976) (Indian supporters of a political candidate); *Weise v. Syracuse University*, 522 F.2d 397 (2d Cir.1975) (female faculty members); *Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975) (supporters of a political candidate); *Smith v. Cherry*, 489 F.2d 1098 (7th Cir.1973), *cert. denied*, 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974) (voters who were deceived as to the actual result of their vote); *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir.1973) (employees of Jewish faith); *Cam-*

*eron v. Brock*, 473 F.2d 608 (6th Cir.1973) (supporters of political candidate); *Azar v. Conley*, 456 F.2d 1382 (6th Cir.1972) (middle-class white family); *Action v. Gannon*, 450 F.2d 1227 (8th Cir.1971) (members of a predominantly white Catholic parish); *Richardson v. Miller*, 446 F.2d 1247 (3d Cir.1971) (persons who advocated racial equality in employment opportunities); *Harrison v. Brooks*, 446 F.2d 404 (1st Cir.1971) (married couple).

**14.** In *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340 (5th Cir.), *cert. denied*, 454 U.S. 1110, 102 S.Ct.

tion for Summary Judgment on Plaintiff's Section 1985(3) claim.

## D. *PLAINTIFF'S STATE LAW CLAIM*

▇▇▇ Plaintiff's only remaining claim against Defendants is a state law claim. The Court *sua sponte* may raise a jurisdictional defect at any time. *Barnett v. Bailey,* 956 F.2d 1036, 1039 (11th Cir.1992); *Fitzgerald v. Seaboard System R.R., Inc.,* 760 F.2d 1249, 1251 (11th Cir.1985). The Court, *sua sponte,* will examine whether it continues to have jurisdiction over this action.

Since Plaintiff is a Georgia domiciliary and Defendant UAP is a Georgia corporation, complete diversity does not exist. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Thus, there is no basis for original federal jurisdiction over Plaintiff's state law claim against Defendants. The state law claim previously was before the court properly as a supplemental claim supported by Plaintiff's federal question claims. *See* 28 U.S.C. § 1367(a) (1994). However, with the dismissal of Plaintiff's False Claims Act and Ku Klux Klan Act claims, there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claim against Defendants UAP and ConAgra.

▇▇▇ The Court must now inquire into whether a jurisdictional basis exists to support this state law claim in federal court. The Court's inquiry is twofold. First, the Court must decide whether it has the power to hear the state law claim. Second, if the Court does have the power to hear the state claim, the Court must decide whether, in its discretion, it will retain jurisdiction over the state claim. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966).

▇▇▇ The question of whether subject matter jurisdiction exists is measured as of the time the Complaint was filed. *In re Carter,* 618 F.2d 1093 (5th Cir.1980). When Plaintiff filed this Complaint, Plaintiff was a Georgia domiciliary and Defendant UAP was a Georgia corporation. When Plaintiff filed her Complaint, Plaintiff had a federal question claim against Defendants UAP and ConAgra and Plaintiff's state law claim against those two defendants were a proper exercise of the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) (1994); *see also Palmer v. Hospital Authority of Randolph County,* 22 F.3d 1559, 1567 (11th Cir.1994). The dismissal of Plaintiff's underlying False Claims Act and Ku Klux Klan Act claims does not deprive the Court of supplemental jurisdiction over the remaining state law claim. *See Palmer,* 22 F.3d at 1568; *Edwards v. Okaloosa County,* 5 F.3d 1431, 1433–35 (11th Cir.1993). Indeed, under 28 U.S.C. § 1367(c), the Court has the discretion to decline to exercise supplemental jurisdiction over a non-diverse state law claim, where the Court has dismissed all claims over which it

---

687, 70 L.Ed.2d 651 (1981), the Fifth Circuit quoted from *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), and required that Section 1985(3) plaintiffs show that they were victims of some "racial, or perhaps otherwise, class-based invidiously discriminatory animus." *Kimble,* 648 F.2d at 345 (quoting *Griffin,* 403 U.S. at 101–02, 91 S.Ct. at 1797–98). The Fifth Circuit noted that "actions brought under Section 1985 must be carefully delineated in accordance with the general purposes of the Act in order to avoid the unintended creation of a general federal tort law." *Id.* at 346. Guided by this admonition, the Fifth Circuit held that a class of plaintiffs alleging that oil industry employers discriminated against the plaintiffs because the plaintiffs had filed personal injury complaints and workers' compensation claims against other employers in the oil industry did not have actionable claims under Section 1985(3). The Fifth Circuit reasoned that a "class" of persons who filed personal injury lawsuits or workers' compensation claims is neither a "class based on political beliefs or associations (the kind of class envisioned by the framers of the Ku Klux Klan Act), nor a class 'having common characteristics of an inherent nature.'" *Id.* at 347 (quoting *Kimble v. D.J. McDuffy, Inc.,* 445 F.Supp. 269, 273 (E.D.La.1978)). According to the Fifth Circuit, the logic of *Griffin* would be lost if the "class" of people allegedly victimized by the defendants' allegedly tortious conduct was considered to be a sufficient class under Section 1985(3) merely by virtue of their common complaint. *Id.*

The reasoning of the Fifth Circuit in *Kimble* applies with as equal a force to whistle-blowers as it does to employees who file personal injury suits or workers' compensation claims. If plaintiffs can state claims under Section 1985(3) merely by virtue of their whistle-blower status, Section 1985(3) would become a general whistle-blower protection act. Clearly, this was not the intent of the Congress that enacted the Ku Klux Klan Act.

had original jurisdiction, but is not required to dismiss the case. *See Palmer*, 22 F.3d at 1567–68.

 As the Eleventh Circuit made clear in *Palmer*, once a court decides that it has power to exercise supplemental jurisdiction under Section 1367(a), then the court should exercise that jurisdiction, unless Section 1367(b) or (c) applies to limit the exercise.[15] In this case, Section 1367(c) applies because the Court "has dismissed all claims over which it has original jurisdiction;" namely, Plaintiff's False Claims Act and Ku Klux Klan Act claims against Defendants UAP and ConAgra. *See* 28 U.S.C. § 1367(c) (1994). While 28 U.S.C. § 1367(c) permits a court to dismiss any state law claims where the court has dismissed all the claims over which it had original jurisdiction, the court can also consider other factors. Where Section 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. *See Palmer*, 22 F.3d at 1569; *Executive Software N. Am. v. United States Dist. Court*, 15 F.3d 1484, 1493 (9th Cir.1994); *Fallin v. Mindis Metals, Inc.*, 865 F.Supp. 834, 841 (N.D.Ga.1994).

 Defendants filed a Motion for Summary Judgment on Plaintiff's state law intentional infliction of emotional distress claim. Resolution of this claim depends on determinations of state law. State courts, not federal courts, should be the final arbiters of state law. *Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir.1992). When coupled with the Court's discretion to exercise supplemental jurisdiction under Section 1367(c), this Court finds that the state law claim remaining in this action is best resolved by the Georgia courts. This is especially true here where Plaintiff seeks belatedly to raise additional state law claims in the proposed amended complaint discussed below. The Court finds that judicial economy, fairness, and convenience dictate having these state law claims decided by state courts.

### E. *PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT*

On January 12, 1995, Plaintiff filed a Motion for Leave to File Amended Complaint [22–1], along with a proposed amended complaint. Plaintiff sought to add a third defendant and two additional state law claims to her original Complaint. On February 16, 1995, Plaintiff filed a Revised Motion for Leave to File Amended Complaint [28–1], along with an additional amended complaint. Plaintiff's Revised Motion for Leave to File Amended Complaint noted that Plaintiff was filing the revised amended complaint to correct a spelling error contained in the original amended complaint, and to add a fourth defendant. However, Plaintiff never expressly withdrew her original Motion. Accordingly, the Court will consider them both.

 In light of the Court's above ruling on Defendants' Motion for Summary Judgment on Plaintiff's federal claims, the Court denies Plaintiff's Motion for Leave to File Amended Complaint and also denies Plaintiff's Revised Motion for Leave to File Amended Complaint. Plaintiff's proposed amended complaints add two state law claims and two new defendants. The Court denies Plaintiff's Motions with respect to the adding of two state law claims for the reasons outlined above concerning supplemental jurisdiction.

 The Court also denies Plaintiff's Motions with respect to the adding of two new defendants. Since the Court has determined that Plaintiff's current federal law claims are without merit, and Plaintiff asserts no new federal claims against these two proposed additional defendants, the only claims Plaintiff can maintain against the proposed defendants are state law claims. For the reasons discussed above, the Court declines to exercise jurisdiction over Plaintiff's various state law claims against these four Defendants. Accordingly, Plaintiff's Motion for Leave to File Amended Complaint and Plaintiff's Revised Motion for Leave to File Amended Complaint are denied.

---

**15.** 28 U.S.C. § 1367 codifies the traditional concepts of ancillary and pendent jurisdiction under the name supplemental jurisdiction. Simply explained, Section 1367(a) grants the federal judiciary congressional approval to extend supplemental jurisdiction to the limits of the Constitution. Section 1367(b) and (c) reduce that grant.

## F. *DEFENDANT CONAGRA'S MOTION FOR SUMMARY JUDGMENT*

On September 15, 1994, Defendant ConAgra filed a Motion for Summary Judgment [13–1], arguing that even if Plaintiff's allegations were true, that Plaintiff was not an employee of Defendant ConAgra and that Defendant ConAgra did not threaten Plaintiff about testifying before the DOA or play any role in the decision to terminate Plaintiff. Since the Court is granting Defendant ConAgra's second Motion for Summary Judgment on Plaintiff's federal law claims, the Court does not reach the issues in Defendant ConAgra's first Motion for Summary Judgment on Plaintiff's federal law claims. Additionally, since the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, the Court denies Defendant ConAgra's Motion for Summary Judgment on Plaintiff's state law claims, as moot.

## III. *CONCLUSION*

The Court GRANTS Plaintiff's Motion to File Response Brief [41–1]. The Court GRANTS Defendants' second Motion for Summary Judgment [32–1] on Plaintiff's False Claims Act and Ku Klux Klan Act claims. The Court DENIES Defendants' Motion for Summary Judgment [32–1] on Plaintiff's state law claim, as MOOT, and DISMISSES Plaintiff's state law claim, without prejudice. Defendant ConAgra's Motion for Summary Judgment [13–1] is MOOT.

The Court DENIES Plaintiff's Motion to for Leave to File Amended Complaint [22–1]. The Court DENIES Defendants' Motion to Amend Answers [23–1], as MOOT. The Court DENIES Plaintiff's Revised Motion for Leave to File Amended Complaint [28–1]. The Court DENIES Plaintiff's Motion to Extend Time for Discovery [26–1], as MOOT.

The Court directs the Clerk to enter final judgment in favor of Defendants on Plaintiff's federal claims under the False Claims Act and the Ku Klux Klan Act and final judgment dismissing Plaintiff's state law claim, without prejudice.

It is SO ORDERED.